**Robert Allen LEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–95–01398–CR.**

Court of Appeals of Texas, Dallas.

Aug. 28, 1997.

---

5. We also note that the legislature uses the language "becomes disabled from sitting" in subsection (b).

Forrest W. Wagner, Pettigrew & Wagner, Grand Prairie, for Appellant.

April E. Smith, Asst. Dist. Atty., Dallas, for Appellee.

## OPINION

LAGARDE, Justice.

Robert Allen Lee appeals from the trial court's judgment revoking his community supervision. In two points of error, appellant contends the trial court abused its discretion in revoking his probation for failing to report to his probation officer and failing to pay a fine, costs, and fees. Concluding that appellant's points of error are without merit, we affirm the trial court's judgment.

On February 15, 1993, appellant was indicted for aggravated sexual contact with a child under fourteen years of age. On the State's motion, the trial court reduced the offense to sexual assault. Appellant waived a jury and pleaded guilty before the trial court. Pursuant to a plea bargain agreement, the trial court sentenced appellant to ten years' confinement, probated for eight years, and a fine of seven hundred fifty dollars. The trial court ordered appellant to comply with certain conditions of probation, which included reporting to his probation officer, paying a fine, paying a monthly probation fee, paying a Crime Stoppers' fee, paying a monthly sex offenders' fee, and having no contact with anyone under the age of eighteen.

On July 27, 1995, the State moved to revoke appellant's probation, contending that appellant met with his probation officer on or about July 7, 1995 and July 21, 1995, but refused to answer the probation officer's questions, and that appellant did not pay any of the fine, costs, or fees. On September 7, 1995, appellant pleaded not true to the allegations in the motion to revoke and an inability to pay the fine, costs, and fees.

During the hearing on the State's motion to revoke, appellant's probation officer, Sandra Potter, testified that when she initially met with appellant in April of 1995, she reviewed the conditions of probation with appellant and appellant acknowledged that he understood these conditions. In June of 1995, appellant reported to Potter that during the summer, he was going door-to-door in residential neighborhoods and "witnessing" as a Jehovah's Witness along with other members of his church. Appellant would not identify the neighborhoods, would not specifi- cally define "witnessing," and would not identify the church members who accompanied him. Potter concluded that through these activities, appellant could come into contact with children in violation of a condition of his probation. Upon receiving the probation officer's report, the trial court conducted a hearing and ordered appellant to stop witnessing door-to-door.

Appellant apparently stopped witnessing door-to-door, but began witnessing by telephone. Potter became concerned that appellant was telephoning children. Potter also noted that appellant had not paid any of the fine, costs, or fees assessed against him. During their meetings on July 7 and July 21, 1995, Potter questioned appellant about these violations. Appellant refused to answer Potter's questions about his religious activities, contending that his witnessing was none of her business. Appellant also refused to answer any of Potter's questions regarding employment or disability, contending that Potter already had this information in her files. When Potter told appellant she did not have any employment information in her files, appellant still refused to answer. Potter advised appellant that refusal to answer was considered a failure to report. Appellant still refused to answer. Appellant's refusal to answer Potter's questions regarding whether he was having contact with children and his failure to pay left Potter unable to inform the trial court whether appellant was complying with the conditions of his probation.

Appellant also testified at the hearing on the State's motion to revoke, stating that he understood the terms and conditions of his probation and stopped witnessing door-to-door in compliance with the trial court's order. Appellant acknowledged that Potter did not forbid witnessing altogether, but instead told appellant that he could continue witnessing if he confined his activities to places without children such as nursing homes. Appellant testified that he did not witness in nursing homes because his church had not yet given him instructions on how to do so.

Appellant admitted he did not pay the fine, costs, or fees. Appellant recalled that when he told Potter he could not pay because he

did not have a job, Potter called the Texas Rehabilitation Commission and advised appellant to make an appointment. Appellant complied, but his epilepsy prevented him from operating machinery or driving and the work he sought or the employment suggested to him involved contact with minors. Appellant, therefore, could not find a job and was unable to pay the fine, costs, and fees. Appellant contended he answered all of Potter's questions except those about his religion and those for which Potter already had records.

On cross-examination, the State asked appellant if he knew of any place in Dallas County where he could work without coming into contact with minors. Appellant replied, "I don't know if there is or not, ma'am." Appellant acknowledged, however, that he could do janitorial work. Instead of trying to find a position as a janitor, appellant witnessed two days a week and stayed home doing nothing five days a week.

None of appellant's fellow church members testified at the hearing.

At the conclusion of the hearing, the court entered an order revoking appellant's community supervision and imposing punishment of seven years' confinement.

### STANDARD OF REVIEW

■ Probation may be revoked upon a finding that an appellant has violated the terms of his or her probation. *Wilson v. State,* 645 S.W.2d 932, 934 (Tex.App.—Dallas 1983, no pet.). Appellate review of a probation revocation proceeding is limited to a determination of whether the trial court abused its discretion. *Bennett v. State,* 476 S.W.2d 281, 282 (Tex.Crim.App.1972); *Wilson,* 645 S.W.2d at 934. To determine whether the trial court has abused its discretion, we look to whether the State has met its burden of proof. *See Cardona v. State,* 665 S.W.2d 492, 493–94 (Tex.Crim.App.1984). The State meets its burden when the greater weight of the evidence before the court creates a reasonable belief that the probationer violated a condition of probation. *Jenkins v. State,* 740 S.W.2d 435, 437 (Tex.Crim.App. 1983), *disapproved on other grounds by Saxton v. State,* 804 S.W.2d 910, 912 n. 3 (Tex.

Crim.App.1991). In other words, the State's burden of proof in a probation revocation hearing is by a preponderance of the evidence. *Cobb v. State,* 851 S.W.2d 871, 874 (Tex.Crim.App.1993).

■ In revocation proceedings, the trial judge is the sole trier of the facts, the credibility of the witnesses, and the weight to be given the testimony. *Taylor v. State,* 604 S.W.2d 175, 179 (Tex.Crim.App. [Panel Op.] 1980); *Ross v. State,* 523 S.W.2d 402, 403 (Tex.Crim.App.1975). It is the trial court's duty to judge the credibility of the witnesses and to determine whether the allegations in the motion to revoke are true or not. *Langford v. State,* 578 S.W.2d 737, 739 (Tex.Crim. App.1979). This Court must therefore view the evidence presented at the revocation proceeding in a light most favorable to the trial court's ruling. *Garrett v. State,* 619 S.W.2d 172, 174 (Tex.Crim.App. [Panel Op.] 1981).

### FAILURE TO REPORT

■ In his first point of error, appellant contends that the trial court abused its discretion in revoking his community supervision for failing to report to his probation officer. Appellant argues that the probation conditions merely ordered him to report, the conditions did not contain any language directing him to answer questions, and the undisputed evidence showed that he physically reported as directed.

To "report" means to convey or disseminate information. *Lightfoot v. State,* 128 Tex.Crim. 281, 284, 80 S.W.2d 984, 985 (1935). As long as the desired information is locked up in one's breast and not disclosed, it is not a report. *Id.* Furthermore, mere physical presence at a meeting or program to which a probationer is ordered by the trial court will not establish compliance with the trial court's order upon a showing that the appellant would not follow the rules and guidelines of the meeting or program or engaged in disruptive behavior during the meeting or program. *See Figgins v. State,* 528 S.W.2d 261, 263 (Tex.Crim.App.1975); *Ott v. State,* 690 S.W.2d 337, 339 (Tex.App.— Eastland 1985, pet. ref'd).

Appellant did physically appear at the meetings with Potter on the dates in question. However, appellant refused to answer Potter's questions about his witnessing, telling Potter that his religious activities were "none of [her] business." Appellant also refused to answer Potter's questions about how he was "going to witness by phone." These questions were designed to determine whether appellant was contacting minors in violation of a condition of his probation. Appellant also refused to answer Potter's questions about whether he was trying to find a job, telling Potter, "I don't have to answer your questions. I refuse." Although appellant testified at the hearing that he attended sessions at the Texas Rehabilitation Center and participated in career assistance counseling in an attempt to find employment, Potter testified that at their meetings, appellant refused to answer her questions about whether he went to the Texas Rehabilitation Commission and to career assessment counseling as ordered. Potter also testified that when she told appellant that she had no reports of his activities with these agencies, appellant still refused to answer her questions regarding whether he was seeking employment. The trial court, in an exercise of its duty to judge the credibility of the witnesses, obviously chose to believe Potter. Because the evidence supports the trial court's ruling that appellant physically appeared but did not cooperate due to his refusal to disseminate requested information to Potter, we conclude that the trial court did not abuse its discretion in revoking appellant's probation for failure to report.

Appellant relies on *Ivy v. State*, 545 S.W.2d 827 (Tex.Crim.App.1977); *Whitehead v. State*, 556 S.W.2d 802 (Tex.Crim.App. 1977), and *Brewer v. State*, 572 S.W.2d 719 (Tex.Crim.App. [Panel Op.] 1978), to support his contention that he reported to his probation officer. These cases are not on point. They address situations in which the defendant's probation officer ordered the defendant to comply with conditions other than those imposed by the trial court's order.

Here, the trial court ordered appellant to report to his probation officer twice monthly. At these meetings, Potter did not impose restrictions upon appellant differing from those within the trial court's order. Potter did not order appellant to attend additional meetings with her or to supply irrelevant information to her. Instead, Potter asked appellant to report his activities pursuant to the court order. Appellant's reliance on *Ivy, Whitehead,* and *Brewer* is therefore misplaced.

The dissent states that the pivotal issue in this case is whether a probationer may decline to answer a question regarding his religious activities without violating the reporting requirement of his probation. Appellant, however, has not presented this issue for our review. Almost every right, constitutional or statutory, may be waived by the failure to object. *Borgen v. State*, 672 S.W.2d 456, 460 (Tex.Crim.App.1984). Appellate courts will not consider any error that counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court. *Rogers v. State*, 640 S.W.2d 248, 264 (Tex.Crim. App. [Panel Op.] 1981) (Op. on State's Second Mot. for Reh'g); Tex.R.App. P. 52(a). This general rule also applies to constitutional questions. *Rogers*, 640 S.W.2d at 264; *see, e.g., In re Marriage of Rutland*, 729 S.W.2d 923, 925(Tex.App.—Dallas 1987, writ ref'd n.r.e.) (failure to object to admission of evidence regarding religious beliefs and practices waived any error regarding admission of that evidence), *cert. denied*, 488 U.S. 818, 109 S.Ct. 58, 102 L.Ed.2d 36 (1988). Furthermore, a brief of the argument on appeal must include such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. Tex. R.App. P. 74(f).

Appellant did not challenge the religious implications of Potter's questions at his meetings with Potter, at the revocation hearing, or on appeal. Appellant has never contended that Potter's questions were an invasion into his freedom of religion. Appellant invited Potter to church with him on at least one occasion, but Potter refused. Appellant not only failed to preserve the issue of freedom of religion for appellate review by his failure to object to these questions at the

revocation hearing, but he also waived it by his failure to argue the issue in his brief on appeal. We decline to make appellant's arguments for him; however, in the interest of justice, we will address the dissent's contentions.

 Probation restrictions are meant to assure that probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. *See Harrison v. State*, 929 S.W.2d 80, 83 (Tex.App.—Eastland 1996, pet. ref'd). Probationers, therefore, do not enjoy the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent on observance of special probation restrictions. *Id.* at 82–83. The goals of probation require and justify the exercise of supervision to assure that these restrictions are in fact observed. *Id.* at 83. A probationer's constitutional rights are not violated when the supervising probation officer asks the probationer if he is complying with the terms of probation. *Id.* Supervision would be an empty exercise if the supervisor could not question the probationer regarding the probationer's activities. *Id.* Rehabilitation of the probationer and safety of the public demand that probation officers be allowed to interview and question the persons they are supervising. *Id.*

 The dissent relies on both *Simpson v. State* and *Macias v. State* for its conclusion that the validity of a probation officer's *questions* regarding a probationer's religious activities should be determined under the guidelines for determining the validity of probation *conditions*. *See Simpson v. State*, 772 S.W.2d 276 (Tex.App.—Amarillo 1989, no pet.); *Macias v. State*, 649 S.W.2d 150 (Tex. App.—El Paso 1983, no pet.). The dissent's reliance on *Simpson* and *Macias* for this proposition is misplaced for three reasons. First, neither *Simpson* nor *Macias* discusses religious freedom. *See Simpson*, 772 S.W.2d at 276; *Macias*, 649 S.W.2d at 150. Second, neither *Simpson* nor *Macias* discusses a probation officer's questions or analogizes probation conditions to a probation officer's questions. *See Simpson*, 772 S.W.2d at 276; *Macias*, 649 S.W.2d at 150. Finally, if we were to undertake the novel task of analogiz-

ing the validity of a probationary condition to the validity of a probation officer's questions regarding appellant's religious activities under the standards set forth in *Simpson* and *Macias,* we would conclude that *Simpson* and *Macias* support the trial court's judgment revoking appellant's probation.

In *Simpson,* the Amarillo Court of Appeals stated that proper probationary conditions are those that contribute significantly both to the rehabilitation of the convicted person and to the protection of society. *Simpson,* 772 S.W.2d at 280. *Accord Fielder v. State,* 811 S.W.2d 131, 134 (Tex.Crim.App.1991); *Gibbons v. State,* 775 S.W.2d 790, 794 (Tex. App.—Dallas 1989), *pet. ref'd,* 815 S.W.2d 739 (Tex.Crim.App.1991); *Fogle v. State,* 667 S.W.2d 296, 298 (Tex.App.—Dallas 1984, no pet.). The Amarillo Court then held that a condition of probation is invalid if it: 1) has no relationship to the crime of which the offender was convicted, 2) relates to conduct that is not in itself criminal, and 3) requires or forbids conduct that is not reasonably related to the future criminality of the offender or does not serve the statutory ends of probation. *Simpson,* 772 S.W.2d at 280–81.

The probationary conditions imposed in *Simpson* required the appellant to, among other things, not change his marital status without his probation officer's permission, carry an identification card, and maintain his hair in a neat and orderly manner. *Id.* at 277. The Amarillo Court held that the condition restricting the appellant's right to change his marital status failed the three-part test and relegated to a nonjudicial officer the unrestricted right to make the decision about such an important and private right as an individual's marital status. *Id.* at 281. The court held that the condition that the appellant maintain his hair in a neat and orderly manner failed the three-part test and was too subjective to let the appellant know what was expected of him. *Id.* However, the court upheld the condition requiring the appellant to carry an identification card, stating that this condition did not exceed the diminished expectation of privacy of a probationer allowed to remain at conditional liberty after conviction of a crime. *Id.*

In applying the three *Simpson* factors for determining whether probationary conditions are valid to a determination of whether Potter's questions were valid, we note that Potter's questions regarding appellant's religious activities, although probably poorly phrased, were directly related to the crime of sexual assault, were directly related to criminal conduct, were designed to prohibit conduct that was reasonably related to future episodes of sexual assault, and served the statutory ends of probation that appellant successfully complete his probation without committing further acts of sexual assault. Potter was attempting to determine whether appellant was complying with the condition of his probation prohibiting contact with minors. Restricting a sex offender's right to roam residential neighborhoods and telephone strangers contributes significantly both to the rehabilitation of the convicted person and to the protection of society.

In applying *Simpson's* analysis of this issue to our case, we note that Potter's questions did not relegate to a nonjudicial officer the unrestricted right to make appellant's religious decisions, were not subjective and ambiguous, and did not exceed the diminished expectation of privacy of a probationer allowed to remain at conditional liberty after conviction of a crime. Any convicted sex offender can expect questions from his probation officer regarding his or her contact with minors, even if this contact is made in connection with "religious activities."

We reach the same conclusion regarding the validity of Potter's questions from applying the analysis of *Macias v. State. See Macias,* 649 S.W.2d at 150. In *Macias,* the El Paso Court of Appeals held that a probation condition is not necessarily invalid simply because it affects a probationer's ability to exercise constitutionally protected rights. *Id.* at 152. Instead, the El Paso court held that the test for determining whether a probation condition is unduly intrusive into constitutionally protected freedoms is that the condition must be reasonably related to the purposes of probation. *Id.* (citing *United States v. Tonry,* 605 F.2d 144 (5th Cir.1979)). The factors used to determine whether a reasonable relationship exists between the

conditions and the purposes of probation are: 1) the purposes sought to be served by probation, 2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded probationers, and 3) the legitimate needs of law enforcement. *Macias,* 649 S.W.2d at 152.

In applying the *Macias* factors to Potter's questions, we note that Potter's questions were reasonably related to the purposes of probation because they were designed to provide Potter with information necessary to determine whether appellant was contacting minors in violation of a condition of his probation. Potter's questions also advanced the probationary purposes of protecting society from the wanderings of a sex offender and deterring appellant from using his religious activities as a means for finding potential victims. We conclude that application of the analyses of both *Simpson* and *Macias* to this case leads to the reasonable conclusion that Potter's questions were not unduly intrusive into appellant's religious freedom.

Viewing the facts presented in this record in the light most favorable to the verdict, as we are required to do, we conclude that the trial court did not abuse its discretion in revoking appellant's community supervision for failure to report. Appellant's first point of error is overruled.

### FAILURE TO PAY

■ Proof of any one alleged violation is sufficient to support an order revoking probation. *O'Neal v. State,* 623 S.W.2d 660, 661 (Tex.Crim.App. [Panel Op.] 1981); *Moore v. State,* 605 S.W.2d 924, 926 (Tex.Crim.App. [Panel Op.] 1980); *Moses v. State,* 590 S.W.2d 469, 470 (Tex.Crim.App. [Panel Op.] 1979). Although we conclude that the trial court properly revoked appellant's probation for his failure to report to his probation officer, we discuss appellant's second point of error in the interest of justice. In his second point of error, appellant argues that the trial court abused its discretion in revoking his community supervision for failing to pay the fine, costs, and fees. Appellant contends he was unable to pay, and therefore his failure to pay is not a valid ground for revoking his probation.

Inability to pay is an affirmative defense to revocation that the defendant must raise and prove by a preponderance of the evidence. *Hill v. State,* 719 S.W.2d 199, 201 (Tex.Crim.App.1986); *Watts v. State,* 645 S.W.2d 461, 463 (Tex.Crim.App. [Panel Op.] 1983); *Jones v. State,* 589 S.W.2d 419, 421 (Tex.Crim.App. [Panel Op.] 1979). The State has the burden of proving that an alleged failure to pay fees, costs, and the like was intentional. *Stanfield v. State,* 718 S.W.2d 734, 738 (Tex.Crim.App.1986). Facts and circumstances attending a given act or omission may reveal intent to pay or the lack thereof. *Hill,* 719 S.W.2d at 201. One who has the ability to pay that which he is required to pay but does not, without more, leaves a factfinder with a strong inference that his failure to pay is intentional. *Id.*

When a defendant raises the defense of inability to pay but the trial court as the factfinder finds that the defendant had the ability to pay, we must view the evidence in the light most favorable to the verdict. *Jones,* 589 S.W.2d at 421. This analysis does not involve the appellate court in any fact finding function. *Hill,* 719 S.W.2d at 201.

Appellant suffered from epilepsy before his conviction, yet agreed to the terms and conditions of his probation when the trial court originally placed him on probation. Appellant acknowledged when he first met with Potter that he understood the terms and conditions of his probation. Appellant admitted at the probation revocation hearing that he failed to pay any of the costs, fine, and fees as required by the terms of his probation. Appellant now argues that these conditions were too strict and that he cannot pay the fine, costs, and fees. Appellant submits that he intended to pay but was unable to do so because he has epilepsy, cannot drive, cannot operate machinery, and cannot find a job free from contact with minors. He also argues that the State did not meet its burden to prove that the failure to pay was intentional because the State did not offer evidence that appellant had the ability to work. We reject appellant's contentions.

The record shows that appellant received permission from his probation officer to visit nursing homes. Furthermore, appellant tes-

tified on cross-examination that he could do janitorial work. Appellant could have applied at nursing homes for a janitorial position. Instead of applying for such a position, appellant sat idly at his mother's house when he was not witnessing. We do not speculate on whether appellant could have *obtained* a job at a nursing home. However, appellant's failure to even *apply* for such a position is evidence of his lack of intent to pay. And although minors are often visitors at nursing homes, Potter expressly gave appellant permission to go to nursing homes, advising him that this activity would not violate the terms and conditions of his probation. Appellant, therefore, failed to prove by a preponderance of the evidence the affirmative defense of inability to pay. The State met its burden to prove that appellant's failure to pay was intentional by offering evidence that appellant had the ability to work, but instead sat at home doing nothing. The trial court's resolution of the facts against appellant presents no abuse of discretion. We overrule appellant's second point of error.

We affirm the trial court's judgment.

THOMAS, C.J., and KINKEADE, OVARD, MORRIS, WHITTINGTON, WRIGHT and HANKINSON, JJ., join in this opinion.

JAMES, J., dissenting with opinion in which MALONEY, CHAPMAN, BRIDGES and MOSELEY, JJ. join.

JAMES, Justice, dissenting.

Because the State failed to prove by a preponderance of the evidence that appellant knowingly and intentionally violated the terms of his probation, I respectfully dissent.

At a hearing on a motion to revoke a defendant's probation, the State has a lower burden of proof than that required for a criminal conviction. The State must prove only by a preponderance of the evidence that a defendant violated a term of probation. *Cobb v. State,* 851 S.W.2d 871, 873 (Tex.Crim. App.1993). The trial court has discretion to continue or revoke the probation. *DeGay v. State,* 741 S.W.2d 445, 449 (Tex.Crim.App. 1987). The trial court's discretion in revok-

ing a defendant's probation, however, is not absolute. *Id.* The court has no authority to revoke probation unless the State shows the probationer violated a condition of his probation *imposed by the court. Id.* Moreover, a trial court may not delegate its duty and responsibility for determining the conditions of probation to the probation officer. *Jones v. State,* 571 S.W.2d 191, 193 (Tex.Crim.App. [Panel Op.] 1978).

In this case, appellant entered a guilty plea to the offense of sexual assault. The trial court placed appellant on community supervision/probation for eight years and imposed seventeen conditions of probation. These conditions included having no contact with anyone under the age of eighteen, reporting to his probation officer twice monthly, paying a probation fee, paying a fine, and paying court costs. The State moved to revoke appellant's probation for failing to report and failing to pay probation fees, a fine, and costs. After a hearing on the State's motion, the trial court revoked appellant's probation. The order recites that the trial court revoked appellant's probation for the reasons set forth in the State's motion to revoke.

In his first point of error, appellant complains the trial court erred in revoking his probation for failing to report. In my opinion, the pivotal issue we must address is whether a probationer may decline to answer a general inquiry regarding his religious activities without violating the reporting requirements of his probation. Before addressing the merits of the case, I address the majority's contention that appellant waived this Court's consideration of whether "reporting" means a probationer must answer every question posed by a probation officer. The majority states that appellant failed to argue this point before the probation officer, at the revocation hearing, or on appeal. On the contrary, the record shows that appellant continually raised the appropriateness of Potter's question. Potter testified that when she first asked appellant about his religious activities he asked why she wanted to know before refusing to answer. Before the trial court, appellant argued that the questioned posed by Potter was overly broad and that religion was a personal matter. In his brief,

appellant argues "[t]his condition of probation (the reporting provision) did not contain any language directing the Appellant to answer questions concerning his religious activities or any other questions."

We liberally construe points of error to fairly and equitably adjudicate the merits of the case. *See* Tex.R.App. P. 74(p). Appellant's point of error and argument is broad enough to include an attack upon the definition of "reporting." Appellant's entire argument centers on "reporting" not meaning answering questions concerning religious activities. As such, whether Potter's question infringed upon appellant's right to religious freedom is fairly raised. Even if appellant has failed to raise this issue in his brief, this Court is not precluded from reviewing any pertinent issue raised by the record. *See Carter v. State,* 656 S.W.2d 468, 469 (Tex. Crim.App.1983); *Rodriguez v. State,* 939 S.W.2d 211, 219 (Tex.App.—Austin 1997, no pet.). Once appellant has invoked this Court's jurisdiction, we may review any unassigned error in the interest of justice. *Rodriguez,* 939 S.W.2d at 219.

Having decided this Court has authority to consider whether a probationer may decline to answer questions related to his religious activities without violating his duty to report, I turn to the merits of the case. The State filed a motion to revoke alleging that appellant failed to report on July 7, 1995 and July 21, 1995 by refusing to answer questions directed to him by the probation officer. Specifically, the State contended appellant violated condition (d), which requires appellant to:

Obey all the rules and regulations of the probation department, and report to the Probation Officer as directed by the Judge or Probation Officer; to-wit: TWICE MONTHLY UNLESS OTHERWISE INSTRUCTED.

Appellant reported twice monthly to his probation officer, Sandra Potter. It is undisputed appellant never missed an appointment. Although appellant physically reported on July 7, 1995 and July 21, 1995, the majority concludes that his failure to answer Potter's questions constituted a "failure to report." Potter's questions related to his religious ac-

tivities, his disability, and his attendance at appropriate community agencies.

First, I address Potter's questions concerning appellant's religious activities. Appellant is an "unbaptized publisher" attempting to become a full-fledged Jehovah's Witness. In June 1995, Potter inquired about appellant's religious activities. Appellant told Potter he witnessed door-to-door accompanied by other members of his church. Although appellant told Potter he witnessed door-to-door, he did not tell her the specific neighborhoods. Upon learning this information, Potter became concerned that appellant would come into contact with a person under the age of eighteen.[1] Potter related her concerns to the trial court who ordered appellant to cease witnessing door-to-door. Appellant testified that he complied with the court's order. Instead of witnessing door-to-door, appellant began witnessing to adult friends and family. He also told Potter that he might begin witnessing by telephone. Potter testified that she had told appellant if he came in contact with minors over the telephone, he would be in violation of his probation. Potter admitted, however, that appellant was not prohibited by the trial court from witnessing, just from witnessing door-to-door. On July 21, 1995, Potter asked appellant "Now tell me about your religious activities." Appellant asked, "What business is it of yours?" Finally, appellant told Potter "I choose not to answer [the question]." There is no evidence that, on the 7th or 21st of July, Potter asked appellant whether he had come into contact with minors during his religious witnessing. Nor is there evidence that appellant refused to answer any inquiry about whether he had come into contact with minors in violation of his probation. The majority's reference to "[a]ppellant's refusal to answer Potter's questions regarding whether he was having contact with children ..." has no support in the record. Potter admitted she had no basis to believe appellant had come into contact with minors while witnessing.

Although I have found no caselaw discussing whether a probationer may refuse to answer questions relating to his constitutional freedoms, there is a body of caselaw discussing whether a condition of probation impermissibly infringes upon a probationer's constitutional freedoms. I use this caselaw to illustrate whether a probationer may refuse to answer questions relating to his constitutional freedom without violating his duty to report.

A probationer is subject to limitations from which ordinary citizens are free. *Simpson v. State*, 772 S.W.2d 276, 280 (Tex.App.—Amarillo 1989, no pet.). However, a probationer still enjoys a significant degree of privacy. *Id.* The legitimate ends of the probation process must justify any restriction upon a probationer's otherwise inviolable constitutional rights, including his right to enjoy religious freedom. *Id.* Proper probationary conditions, therefore, are those that contribute significantly to the convicted person's rehabilitation and society's protection. *Id.*

A reasonable relation between the conditions of probation and the purposes of the probation act must exist. *See Macias v. State*, 649 S.W.2d 150, 152 (Tex.App.—El Paso 1983, no pet.). Three factors determine the reasonable relationship: "(1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." *Id.* An invalid condition of probation, on the other hand, includes a condition which "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to the future criminality of the offender or

---

1. In addition, Potter asked appellant for names and phone numbers of people from his church to verify his activities. Specifically, Potter wanted to ascertain whether appellant came into contact with minors. Appellant did not have the requested information. According to appellant, he asked the church for names and phone numbers of church members who had witnessed with him, but the church did not give him this information. Appellant further testified that he invited Potter to attend a memorial service at his church. In this way, Potter could obtain necessary information.

does not serve the statutory ends of probation." *Simpson,* 772 S.W.2d at 280–81.

I conclude that we should apply these same guidelines to determine whether a question asked by a probation officer must be answered by the probationer. Accordingly, an inquiry "Now tell me about your religious activities" is not reasonably related to appellant's crime or conditions of his probation. Therefore, appellant's refusal to answer that question was within his constitutional right to reasonable privacy in his spiritual affairs. *See Macias,* 649 S.W.2d at 152.

In *Macias v. State,* the El Paso Court of Appeals recognized a probationer has the right to enjoy a significant degree of privacy and concluded any restriction upon their otherwise inviolable constitutional rights can be justified only to the extent actually necessitated by the legitimate demands of the probation process. *Macias,* 649 S.W.2d at 152 (citing *United States v. Consuelo–Gonzalez,* 521 F.2d 259 (9th Cir.1975); *Basaldua v. State,* 558 S.W.2d 2, 7 (Tex.Crim.App.1977); *Tamez v. State,* 534 S.W.2d 686, 692 (Tex. Crim.App.1976)). Although the majority concedes Potter's question was "probably poorly phrased," the majority concludes the question was directly related to the crime of sexual assault. The majority does not say how appellant's private spiritual activities such as attending evening prayer services accompanied by his mother, witnessing about his religious faith with adults, or witnessing about his religious faith by telephone related to the crime of sexual assault. Instead, the majority indicates that "[r]estricting a sex offender's right to roam residential neighborhoods and telephone strangers contributes significantly both to the rehabilitation of the convicted person and to the protection of society." The record is devoid of any evidence to support the majority's speculation.

Further, the majority misconstrues the record in applying the factors set out above. The majority concludes Potter's questions were directly related to appellant's crime and criminal conduct, were designed to prohibit conduct reasonably related to future episodes of sexual assault, and served the statutory ends of probation that appellant successfully complete his probation without committing further acts of sexual assault. As stated previously, I fail to see how appellant's religious activities relate in any way to his criminal conduct or future rehabilitation. There is nothing in the record to indicate appellant's original crime related to his religious activities, that appellant used witnessing merely as a tool to meet other victims, or that appellant ever met a person under the age of eighteen while witnessing. Moreover, there is nothing in the record to show that Potter's questions concerning appellant's religious activities related to his future rehabilitation. The majority could have just as easily inferred that appellant's commitment to his religion and practicing the tenets of his faith would have helped him in his rehabilitation efforts.

Therefore, the issue in this case is whether the specific unanswered question, "Now what about your religious activities," constitutes a failure to report. Although we accord much deference to the trial court's decision to revoke probation, such deference fails when the evidence is uncontroverted that appellant did not intentionally or knowingly violate the conditions of his probation. Under both *Smith* and *Simpson,* engaging in religious activities generally was not a prohibited condition of appellant's probation. *See Smith v. State,* 932 S.W.2d 279, 282–83 (Tex.App.— Texarkana 1996, no pet.); *Simpson,* 772 S.W.2d at 280–81. Likewise, appellant's failure to surrender his privacy rights concerning religious matters, in the absence of a specific question regarding his having contact with minors, would not constitute failure to report to his probation officer.

While I agree with the majority that the trial court has discretion to either continue or revoke probation, the trial court is not accorded absolute discretion. *Smith,* 932 S.W.2d at 281. An order revoking probation must be based on evidence showing a violation of a condition of probation *imposed by the court. Id.* The trial court, as well as the majority, interpreted "report" to include not only appellant's physical presence, but his verbal answers to the questions asked by the probation officer. I agree that a probation officer must be able to question a probationer

concerning his activities that are related to his offense or conditions of his probation. *See Harrison v. State,* 929 S.W.2d 80, 83 (Tex.App.—Eastland 1996, pet. ref'd). However, I do not agree that a probation officer has unbridled authority to question a probationer on every subject that might pique the officer's curiosity, particularly matters afforded special constitutional protections, such as the probationer's religious beliefs and activities. A probationer has a diminished expectation of privacy by virtue of the legitimate demands of the probation system, but his privacy rights may be restricted only to the extent necessary for his reformation and rehabilitation. *See Tamez,* 534 S.W.2d at 692. I would conclude a probationer's limited right to privacy extends to matters not directly related to the conditions of his probation or the legitimate ends of the appellant's probation. Clearly, Potter could have asked appellant if he had contacted any minors or had witnessed door-to-door since appellant's last report, and appellant's failing to answer would have violated the reporting condition of his probation. Potter chose not to ask this crucial and pertinent question. I cannot conclude that the State proved by a preponderance of the evidence that appellant violated a court imposed condition of his probation by refusing to answer Potter's general question regarding his religious activities.

I next address appellant's failure to answer questions concerning his disability and whether he attended community agencies designated to assist him with his disability and obtaining employment.[2] Potter testified that on July 7, 1995 and July 21, 1995, appellant responded to her questions regarding his efforts to obtain employment counseling by saying the information was already in his probation file. According to Potter, she told appellant the information was not in the file. At the revocation hearing, however, Potter did not testify that the information was not in appellant's file. Instead, the record conclusively shows Potter was in error.

Appellant testified that he had attended sessions at the Texas Rehabilitation Center

and had participated in career assistance counseling. Appellant said he signed a release at the Texas Rehabilitation Commission allowing Potter to obtain any information she needed. According to appellant, he told Potter to look in her file for the information concerning such activities because he could not remember the dates or names.

William G. Hornyak, a therapist for Dallas Diagnostic and Counseling Services, testified that appellant had attended thirty-five sessions with him since November 1994 and had been an active participant in a weekly therapy program. Hornyak said the probation department was paying for his services and he sent progress reports directly to the probation department. Appellant introduced at trial copies of the ledger sheet for appellant's visits that listed "Potter, P.O." Appellant also introduced copies of therapy progress reports for several months preceding the hearing that were included in his probation file. Each report was addressed to individual probation officers at the Dallas County Probation Department, including Sandra Potter. Thus, the information sought was readily available to the probation officer or already in appellant's file.

Because Potter did not indicate she had reviewed appellant's file to determine whether or not the appellant's file contained the information from the agencies, and appellant did not know the answers to Potter's questions, the State failed to prove by a preponderance of the evidence that appellant intentionally failed to "report." Instead, the record shows appellant was unable to supply the requested information to his probation officer, who clearly had convenient access to the information she sought from appellant.

Therefore, the State failed to prove by a preponderance of the evidence that appellant intentionally and knowingly failed to report by declining to answer Potter's questions to her satisfaction. I would sustain appellant's first point of error.

In his second point of error, appellant contends the trial court abused its discretion in revoking his community supervision for fail-

---

2. Maintaining suitable employment was a condition of appellant's probation. However, the mo- tion to revoke does not allege appellant violated this provision.

ure to pay the fine, court costs, and probation fees. At the hearing on the State's motion to revoke, appellant raised the defense of inability to pay. As such, appellant had the burden of persuading the trial court he could not pay the fees. *See Hill v. State,* 719 S.W.2d 199, 201 (Tex.Crim.App.1986); *Stanfield v. State,* 718 S.W.2d 734, 737 (Tex. Crim.App.1986). The State retained the burden, however, of proving appellant intentionally failed to pay the fees, costs, and fine. *Stanfield,* 718 S.W.2d at 738. Appellant's ability to pay relates to whether appellant intentionally did not pay the fees, costs, and fine. *See id.* If a probationer has the ability to pay but does not, there is a strong inference appellant's failure to pay was intentional. *Id.*

Potter testified she had no information concerning appellant's income. Appellant testified that he had no income. Thus, the issue is whether appellant remained unemployed voluntarily. Potter said she did not know whether appellant sought help from the Texas Rehabilitation Commission or career assessment counseling in obtaining a job. As discussed above, appellant did attend counseling and the probation department's records either included his progress reports or were readily available. Appellant was a machinist by trade, but had epilepsy and took medication for the condition. The doctor instructed appellant he could not drive a car or operate heavy machinery. Appellant testified that the only income he had received since being placed on probation was from AFDC (temporarily while his son was living with him) and food stamps. He lived at his parent's house. His mother was his only means of transportation. According to appellant, he had related this information to his first probation officer.

Concerning his lack of employment, appellant testified that he had attempted to find a job. The work he attempted to obtain or those positions suggested to him were located in places where he might come into contact with minors. Therefore, his opportunities were limited. Appellant indicated that he would continue searching for a job. Appellant said he would pay the costs if and when he found a job.

On cross-examination, the State asked appellant if there was another job he could perform other than that of a machinist. More specifically, the State asked appellant if he could "push a broom." Appellant said he could do janitorial work, but that available positions would put him in contact with children under the age of eighteen. The State then asked if appellant was claiming there were no jobs in Dallas County where he would not come in contact with minors. Appellant said he did not know, but he had looked for such a job and had not found one. The State indicated that appellant did not really look for a job. Appellant reiterated that he had looked for a job. Immediately thereafter, the State asked how often appellant witnessed door-to-door before being told to cease such activity. Appellant said he had witnessed on Friday and Saturday. The State asked what appellant did the other five days of the week. Appellant answered, "nothing."

From this questioning, the majority concludes appellant did not look for a job, but instead stayed home doing nothing. Further, the majority indicates that appellant could have obtained a janitorial job in a nursing home without violating the conditions of his probation because Potter had told him he could witness in a nursing home. The majority does not explain, however, how the probation officer would have the authority to amend the conditions of appellant's probation or to excuse him from the strictly enforced restrictions against coming in contact with minors while he was working at a nursing home when it is common knowledge that minors are often visitors at nursing homes. Thus, the majority's conclusion is not only mere speculation, but I find the State's insinuation that appellant could have found a job without violating this condition patently disingenuous. If appellant's witnessing door-to-door in the company of fellow church members and witnessing by telephone raised such concern about his coming in contact with minors in violation of his probation, I am unable to think of many jobs in Dallas County where appellant would not potentially come in contact with a minor. The same risks identified by the probation officer and

the trial court in appellant's religious activities also attended every action necessary for appellant to work outside his mother's home: the riding of a bus to work, entering the building, working inside the building, answering the phone, leaving the building, and traveling home.

After reading the entire line of questioning, it is clear appellant looked for a job and could not find one. When asked about his religious activities, appellant indicated he witnessed two days out of the week. He did not perform any religious activities the other five days of the week. Because he could not find a job, appellant had no income with which to pay the requisite costs. Mere speculation on the State's and the majority's part that appellant may have been able to obtain a job at a nursing home is insufficient to defeat appellant's defense of inability to pay.

In summary, nothing controverted appellant's testimony concerning his attendance at the community agencies for employment guidance and his search for a job under his physical handicap and the strict limitations of his probation. In fact, the State produced not a scintilla of evidence appellant had any income or a realistic opportunity to gain employment without violating the stringent conditions of his probation. As such, the State failed to prove by a preponderance of the evidence that appellant intentionally failed to pay his fees and costs.

In conclusion, when a probationer has never missed an appointment with his probation officer and has answered all the officer's questions relating to the conditions of his probation to the extent of his knowledge, the trial court's revocation of probation for failure to report is not supported by a preponderance of the evidence, and therefore, constitutes an abuse of discretion. *Smith*, 932 S.W.2d at 282. The State also failed to prove by a preponderance of the evidence that appellant intentionally failed to pay the costs, fine, and fees. Because the State failed to prove by a preponderance of the evidence that appellant intentionally violated the conditions of his probation, the trial court's revo-

cation of appellant's probation was an abuse of discretion and should be reversed.

I respectfully dissent.