

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-040-CR

BRIDGET RENEE LEITAO A/K/A                                      APPELLANT
BRIDGET R. LEITAO

V.

THE STATE OF TEXAS                                                  STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

### MEMORANDUM OPINION[1]

------------

Bridget Renee Leitao appeals from her adjudication of guilt and twelve-year sentence for assaulting a police officer with a knife. In two points, she argues that the trial court erred (1) by finding "true" to the allegations in the State's petition to proceed to adjudication and (2) by admitting a

------------

[1] *See* Tex. R. App. P. 47.4.

methamphetamine recipe into evidence at the adjudication hearing over her hearsay objection. We affirm.

## Background

In April 2007, Appellant pleaded guilty to having assaulted a public servant with a knife in May 2006, and the trial court placed her on deferred adjudication community supervision. The State filed a petition to proceed to adjudication in September 2007, alleging that Appellant had caused serious bodily injury to and attempted to murder Amy Mattis by cutting or stabbing her with a knife in violation of the terms of her deferred adjudication community supervision. Appellant pleaded "not true" to the allegations.

Two witnesses testified at the adjudication hearing: Mattis, the complainant in the knifing allegation; and Mattis's treating physician, Dr. Fernando Garcia. Mattis testified that she and Appellant had had an "intimate relationship" for several years. Mattis said that when she told Appellant that she wanted to break up with her and started to move her possessions out of their shared apartment, Appellant tried to kill herself with a kitchen knife. Mattis testified that she tried to stop Appellant from killing herself and was "scraped" with the knife in the neck and stomach. Under questioning by the State, Mattis admitted that she had told a 911 operator at the time of the incident that Appellant had stabbed her and that she was bleeding profusely

2

and afraid she was going to die. She further admitted that at the hospital, she told a detective that Appellant said that if Mattis left her, she would kill Mattis and herself. Under questioning by defense counsel, Mattis reiterated that Appellant was trying to kill herself and had attempted suicide several times before and that Mattis was injured when she tried to take the knife away from Appellant.

Dr. Garcia testified that Mattis's wounds were more than superficial scratches and were consistent with stab wounds. He said that Mattis's neck wound was close to the carotid artery and deep enough to make him suspect an esophageal or tracheal injury. Dr. Garcia testified that Mattis's injuries, based on his experience with knife wounds, were more consistent with intentional injuries than accidental injuries.

The court found the serious bodily injury allegation in the State's petition to be "true" and adjudicated Appellant guilty of the May 2006 aggravated assault on a public servant.

At the punishment phase of the hearing, Fort Worth Police Officer Justin Stroud testified that on May 25, 2006, he responded to a domestic disturbance call at Appellant's apartment. When he entered the apartment, Appellant attacked him with a "butterfly" knife, and he shot her. Among the exhibits offered by the State was a seven-page, handwritten recipe for manufacturing

3

methamphetamine found during a search of Appellant's apartment after the May 2006 assault. Appellant objected to the document as hearsay. The trial court overruled her objection and admitted the exhibit into evidence.

The trial court assessed punishment at twelve years' confinement, and Appellant filed this appeal.

**Legal Sufficiency**

In her first point, Appellant challenges the legal sufficiency of the evidence to support the trial court's finding of "true" to the State's allegation that she violated the terms of her deferred adjudication community supervision by causing serious bodily injury to Mattis.

Appellate review of the decision to adjudicate guilt is "in the same manner" as review of the revocation of community supervision. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2008). Appellate review of a community supervision revocation is limited to determining whether the trial court abused its discretion, and we examine the evidence in the light most favorable to the trial court's findings. *See Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984). The State must prove by a preponderance of the evidence that appellant violated the conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). The trial judge is the sole trier of facts and determines the credibility of the witnesses and the

4

weight to be given to the testimony. *See Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.).

Here, Appellant's conditions of community supervision required that she commit no crime against the laws of Texas. The State alleged that she violated that condition by causing serious bodily injury to Mattis. Although Mattis testified at the revocation hearing that Appellant was attempting to kill herself, not Mattis, and that the knife merely "scraped" her as she attempted to take it away from Appellant, she also admitted that she had told the 911 operator that Appellant had stabbed her and that she had told a detective that Appellant said she intended to kill not only herself but Mattis as well. Although Mattis's trial testimony conflicted with her earlier statements, the trial court was free to disbelieve her trial recantation. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding factfinder free to disbelieve complainant's trial recantation of earlier statements and that earlier statements were legally sufficient to support guilty verdict). Dr. Garcia's testimony supports the conclusion that Mattis's wounds were the result of an intentional stabbing, not an accidental "scraping."

Viewing the evidence in the light most favorable to the trial court's decision and measuring it against the preponderance of the evidence standard, we hold that the trial court did not abuse its discretion by finding true to the

State's allegation that Appellant caused serious bodily injury to Mattis by stabbing her with a knife. *See Cobb*, 851 S.W.2d at 874; *Cardona*, 665 S.W.2d at 493–94. We overrule Appellant's first point.

### Admission of Methamphetamine Recipe

In her second point, Appellant argues that the trial court erred by admitting into evidence the handwritten methamphetamine recipe over her hearsay objection. We review a trial court's evidentiary rulings under an abuse of discretion standard. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Casey v. State,* 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)*.*

The State argues that Appellant waived this point by failing to object to the exhibit "when the witness described [it]," citing *United States v. Wicks*, 995 F.2d 964, 975 n.8 (10th Cir.), *cert. denied*, 510 U.S. 982 (1993). In *Wicks*, the court held that a methamphetamine recipe was not hearsay because it was not admitted for the truth of the matter asserted, but it also stated in a footnote dictum that even if the recipe was hearsay, the defendant failed to object when the sponsoring witness identified the document as a methamphetamine recipe, thereby in effect setting forth the hearsay contained

6

in the document. *Id.* In our case, when asked to identify several exhibits, the sponsoring witness stated that the document in question was a "recipe for ice." The State then offered the exhibits, and Appellant, after taking the witness on voir dire, objected to the document in question as hearsay. The trial court overruled her objection and admitted the document.

We hold that under the circumstances, Appellant preserved her hearsay objection for review. The sponsoring witness's identification of the exhibit as a "recipe for ice" is somewhat ambiguous and does not convey the document's actual contents, namely, step-by-step detailed instructions for manufacturing methamphetamine out of readily-available supplies. Moreover, Appellant objected to the document as hearsay almost immediately after the witness identified it. We therefore decline to apply the Tenth Circuit's footnote dictum, and we hold that Appellant preserved her hearsay objection for our review.

But we further hold that her hearsay objection lacks merit. "Hearsay" is an out-of-court statement, including a written verbal expression, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). The "matter asserted" by the methamphetamine recipe is that one can manufacture methamphetamine by following the steps set forth therein. The State did not offer the recipe to prove that one can manufacture methamphetamine by

7

following the steps but, presumably, to show that Appellant deserved a greater punishment for possessing something that purported to be a methamphetamine recipe. Therefore, the recipe was not offered in evidence to prove the truth of the matter asserted, and it is not hearsay. We hold that the trial court did not abuse its discretion by overruling Appellant's hearsay objection, and we overrule her second point.

**Conclusion**

Having overruled both of Appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: GARDNER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 15, 2009