

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-026-CR

DERRICK KEITH COOKE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

AND
NO.  2-08-027-CR

EX PARTE DERRICK KEITH COOKE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

AND
NO.  2-08-212-CR

DERRICK KEITH COOKE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 355th DISTRICT COURT OF HOOD COUNTY

------------

# MEMORANDUM OPINION[1] ON
# PETITION FOR DISCRETIONARY REVIEW

------------

After reviewing Appellant's petition for discretionary review, we withdraw our May 21, 2009 opinion and judgment and substitute the following.

## Introduction

In these consolidated appeals from Appellant's adjudication on one indictment for family assault, his conviction on a second indictment for family assault, and the denial of his petition for writ of habeas corpus, Appellant Derrick Keith Cooke argues that enhancing his 2002 family assault adjudication and 2008 family assault conviction from misdemeanors to felonies by virtue of a 1999 family assault conviction violated the constitutional prohibition on ex post facto laws and that the trial court abused its discretion by proceeding to adjudication on the 2002 offense. We affirm.

## Background

1.    The first indictment

In 2002, a grand jury indicted Appellant for assault causing bodily injury to a family member. The indictment also alleged a 1999 conviction from New Mexico for assault causing bodily injury to a family member. Pursuant to a plea bargain, Appellant pled guilty to the charged offense, which the written plea

------------

[1] See Tex. R. App. P. 47.4.

admonishments identified as a third degree felony. The trial court placed him on deferred adjudication community supervision for five years.

2.    The petition to proceed to adjudication and the second indictment

In August 2007, the State filed a petition to proceed to adjudication, alleging that Appellant had violated the terms of his deferred adjudication community supervision by assaulting and causing injury to a family member in June 2007 and by failing to report to his community supervision officer for several months in 2003, 2006, and 2007. A grand jury also returned another indictment for assault causing bodily injury to a family member arising from the 2007 alleged offense. The indictment contained an enhancement paragraph alleging that Appellant had been convicted of assault causing bodily injury to a family member in the first case in 2002.

3.    Adjudication on the first indictment

Appellant pleaded "not true" to the allegations in the State's petition to proceed to adjudication. He also filed a petition for writ of habeas corpus, arguing that penal code sections 22.01(b)(2) and (f)(1), when read together, violate the constitutional prohibitions on ex post facto laws. Appellant offered into evidence a "Final Order on Criminal Complaint" from the New Mexico court, which states that the court found Appellant guilty of aggravated battery against a household member but deferred sentence, and that Appellant had

3

fulfilled all terms and conditions of the deferred sentence.  The trial court denied his petition.

At the hearing on the State's petition, Monica Vickers testified that Appellant and his wife, C.C., are her neighbors and that C.C. is her friend.  She said that on June 18, 2007, she received a call on her cell phone from C.C.  Vickers testified that when she answered the phone, C.C. did not say anything, but Vickers could hear Appellant yelling at C.C. and C.C. pleading with Appellant, and then the line went dead.  Vickers said that she called 911.

Hood County deputy sheriff Robert Weldon testified he responded to Vickers's 911 call.  He said that when he arrived, C.C. was crying and hysterical and said, "Thank God you are here.  [Appellant has] been holding me captive in our bedroom."  Weldon testified C.C. told him that she and Appellant were arguing and that Appellant hit her on the back and ribs with his closed fist.  Weldon said that C.C. told him that when she tried to leave her bedroom, Appellant grabbed her by the hair and threw her against the bed and that her hair looked as though it had been pulled.  He testified that he did not see any injuries on C.C.'s face.  Weldon said that C.C. told him she had pain in her shoulders and ribs, though on cross-examination he conceded that he did not write anything about pain in his report.

Deputy Brook Dezavala photographed the places on C.C.'s body where she said Appellant had hit her, and the trial court admitted the photos into evidence. Dezavala testified that the photos showed redness around C.C.'s neck running from her collarbone to her left breast and broken skin on her left shoulder.

C.C. testified that on the day in question, she and Appellant were arguing and that Appellant shoved her and either pushed or punched her in the ribs or back. She admitted to having given a written and signed statement to the police that Appellant had hit her on the shoulder with a closed fist. She denied that the photos showed bruises or broken skin on her body.

Appellant's father, Joe Cooke, testified that he went to Appellant and C.C.'s house on the night of the incident and did not see any injuries on C.C.

Other witnesses testified about other aspects of Appellant's compliance or noncompliance with the terms of his deferred adjudication, but we will forego summarizing their testimony because it is not relevant to the trial court's findings.

The trial court found that Appellant violated the terms of his deferred adjudication by intentionally or knowingly causing bodily injury to C.C. by striking her on her shoulder, back, and ribs with his fist; adjudicated Appellant

5

guilty of the 2002 assault; and, after hearing punishment-phase evidence, sentenced him to three years' confinement.

## 4.    Conviction on the second indictment

Appellant was tried on the second indictment in April 2008. The evidence presented at trial was essentially similar to the evidence presented at the adjudication hearing in the other case. Because the evidence presented at trial does not figure in Appellant's sole point relating to that case, we will forego a detailed analysis of the evidence. A jury convicted Appellant of assault causing bodily injury to a family member and assessed punishment of eight years' confinement.

## Ex Post Facto Violation

In his first point in his direct appeal from the adjudication on the 2002 indictment, his first point in his direct appeal from his 2008 conviction, and his sole point in his habeas appeal, Appellant argues that application of penal code sections 22.01(b)(2) and (f)(1)—which he claims the State used to enhance the 2002 assault from a Class A misdemeanor to a third degree felony by virtue of the 1999 New Mexico family assault—violated the federal and Texas constitutional prohibitions on ex post facto laws. *See* U.S. Const. art. I, § 10 (prohibiting ex post facto laws); Tex. Const. art. I, § 16 (same); Tex. Penal Code Ann. § 22.01(b)(2), (f)(1) (Vernon Supp. 2008). The gist of Appellant's

argument is that the legislature did not amend section 22.01 to allow enhancement by a deferred adjudication until 1999—after Appellant was found guilty of family assault in New Mexico but before he pleaded guilty to the 2002 offense in Texas. *See* Act of June 18, 1999, 76th Leg., R.S., ch. 1158, § 1, 1999 Tex. Gen. Laws 4063, 4063 (amending section 22.01 to add subsection (f), which allowed enhancement under subsection (b)(2) with a deferred adjudication for family assault), *amended by* Act of May 20, 2005, 79th Leg., R.S., ch. 788, § 1, 2005 Tex. Gen. Laws 2709, 2709 (current version at Tex. Penal Code Ann. § 22.01(f)(1) (Vernon Supp. 2008)).

Appellant's 2002 conviction was not enhanced by a deferred adjudication; thus, it does not implicate the deferred adjudication provision of penal code section 22.01(f)(1). This is true for two reasons. First, when Appellant pleaded guilty to the 2002 offense, he signed a judicial confession admitting that "any enhancement and habitual allegations set forth in the indictment are true and correct," i.e., "that prior to the commission of the [subsequent offense] the defendant had been previously *convicted* of an assault with bodily injury against a member of the defendant's family or household." [Emphasis added.] *See Edison v. State*, 253 S.W.3d 303, 305 (Tex. App.—Beaumont 2008, no pet.) (holding judicial confession to prior family assault conviction alleged in indictment sufficient to prove prior conviction and

7

enhance current family assault to a felony); *see also Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984) (holding a defendant's plea of true to an enhancement paragraph provides legally and factually sufficient evidence to find the paragraph true beyond a reasonable doubt).

Second, although Appellant claims the New Mexico offense resulted in deferred adjudication, the "Final Order on Criminal Complaint" he filed in support of his argument says otherwise. The New Mexico order specifically says that Appellant was adjudicated guilty: "This court having previously *found the defendant guilty* and having deferred sentencing . . . ." Thus, the New Mexico court deferred *sentencing*, not *adjudication*. *See* N.M. Stat. Ann. § 31-20-3 (West 2009) (providing that court may defer sentence "*[u]pon entry of a judgment of conviction*" (emphasis added)). Because the State did not enhance Appellant's 2002 offense with a deferred adjudication, his argument that the use of a deferred adjudication to enhance the offense violated the ex post facto prohibition fails.

Moreover, even if the 1999 family assault charge had been resolved by deferred adjudication, enhancing the 2002 offense under the 1999 version of section 22.01(f) would not violate the ex post facto prohibition. The court of criminal appeals has "upheld the use for enhancement of convictions which occurred before the effective date of [a new] enhancement provision on the

8

ground that the enhancements punish the new offense rather than the prior conviction." *Scott v. State*, 55 S.W.3d 593, 596 (Tex. Crim. App. 2001) (citing *Shaw v. State*, 529 S.W.2d 75, 76 (Tex. Crim. App. 1975)); *see also McDonald v. Massachusetts*, 180 U.S. 311, 312, 21 S. Ct. 389, 390 (1901) ("The punishment is for the new crime only, but is the heavier if he is an habitual criminal. . . . The statute, imposing a punishment on none but future crimes, is not ex post facto."); *Ex parte White*, 211 S.W.3d 316, 320 (Tex. Crim. App. 2007) ("[E]nhancement statutes penalize the new criminal offense being enhanced rather than the prior offense used for enhancement[,] and . . . a statute imposing a punishment on only future crimes is not an ex post facto violation.").

Appellant relies upon *Munoz v. State,* 133 S.W.3d 836, 837-38 (Tex. App.—El Paso 2004, no pet.) (citing *Scott,* 55 S.W.3d at 597–98), to support his argument that enhancement by the 1999 family assault is an ex post facto violation. Both cases are distinguishable. In *Scott*, the defendant pleaded guilty to indecency with a child in 1991 in exchange for deferred adjudication. *Scott*, 55 S.W.3d at 595. The version of the Texas deferred adjudication statute in effect at the time prohibited the use of a successfully-completed deferred adjudication to enhance a subsequent offense. *Id.* In 1997, the

legislature amended code of criminal procedure article 42.12, section 5(c) to allow use of a deferred adjudication as provided by penal code section 12.42. *Id.* at 596. The same act amended section 12.42 to make a successfully-completed deferred adjudication count as a conviction for the enhancement of certain crimes. *Id.* The defendant was later convicted of aggravated sexual assault and, under the new version of section 12.42, received a mandatory life sentence. *Id*. at 595. The court held that enhancing the sentence with the prior deferred adjudication violated the ex post facto prohibition because of the explicit limitation on the collateral consequences of deferred adjudication in the version of article 42.12 that existed when the defendant pleaded guilty to the prior offense. "[W]hen a statute explicitly restricts the collateral consequences of an offense, the defendant is entitled to rely on that restriction. Punishment for the offense is increased by the removal of the statutory restriction, and such an increase in punishment constitutes an ex post facto law." *Id.* at 597–98; *see also Munoz*, 133 S.W.3d at 838 (holding appellant, in pleading guilty in 1997, was entitled to rely on language in article 42.12, section 5(c) prior to its amendment, that explicitly limited the collateral consequences of deferred adjudication).

When there is no such statutory restriction, there is no ex post facto violation. *White*, 211 S.W.3d at 320. The difference between this case, on

10

one hand, and *Scott* and *Munoz* on the other, is that unlike the 1991 version of the Texas deferred adjudication statute, the relevant New Mexico statute contains no such explicit restriction upon which Appellant could have relied in 1999. *See* N.M. Stat. Ann. § 31-20-8 (West 2009); *Rodriquez v. State*, 227 S.W.3d 842, 845–46 (Tex. App.—Amarillo 2007, no pet.) (holding New Mexico deferred sentencing statute did not prohibit use of successfully-completed probation to enhance subsequent offense; thus, enhancement did not violate ex post facto prohibition). Absent such a restriction, Appellant cannot show an ex post facto violation.

In his petition for discretionary review, Appellant points out for the first time that the New Mexico "Final Order on Criminal Complaint" states that the 1999 criminal charges are "dismissed," and argues that, based on that language, there was no prior New Mexico "conviction" that could be used to enhance the 2002 conviction. But the order shows that it was not signed until October 15, 2007, long after Appellant's indictment and deferred adjudication in 2002. Appellant had not successfully completed his New Mexico community supervision and the 1999 charges had not been dismissed at the time he pled guilty to the subsequent charges in 2002. For this additional reason, *Scott* and *Munoz* do not apply because they addressed a prior statutory prohibition against using a *successful* dismissal or discharge of deferred adjudications for

11

enhancement of subsequent offenses.  *See Martinez v. State*, No. 05-00-00517-CR, 2002 WL 257697, *4 (Tex. App.—Dallas 2002, no pet.) (mem. op., not designated for publication) (distinguishing *Scott* because appellant had not successfully completed deferred adjudication community supervision and obtained a discharge or dismissal and case thus fell outside scope of previous explicit statutory prohibition).

We overrule Appellant's first point in his direct appeal from his adjudication on the first indictment and his sole point in his habeas appeal.[2]

In his sole point in his direct appeal from his conviction on the second indictment, Appellant adopts and incorporates by reference his arguments from the other appeals regarding the putative ex post facto violation.  Having overruled those arguments, we also overrule his sole point in this third appeal for the reasons stated above.

---

[2] We express no opinion as to the effect of penal code section 22.01(f)(2)—which the legislature enacted in 2005 and which, for the first time, specifically authorized enhancement of family assault by out-of-state convictions for conduct substantially similar to the offenses listed in section 22.01(b)(2)—because Appellant did not address that subsection in the trial court or on appeal.  *See* Act of May 20, 2005, 79th Leg., R.S., ch. 788, § 1, 2005 Tex. Gen. Laws 2709, 2709 (current version at Tex. Penal Code Ann. § 22.01(f)(2) (Vernon Supp. 2008)).

12

## Sufficiency of Evidence

In his second point in his direct appeal from his adjudication on the first indictment, Appellant argues that the trial court abused its discretion by proceeding to adjudication because the State failed to prove that he violated the terms of his deferred adjudication by committing another assault causing bodily injury in 2007.

Appellate review of the decision to adjudicate guilt is "in the same manner" as review of the revocation of community supervision. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2008). Appellate review of a community supervision revocation is limited to determining whether the trial court abused its discretion, and we examine the evidence in the light most favorable to the trial court's findings. *See Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984). The State must prove by a preponderance of the evidence that the defendant violated the conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). The trial judge is the sole trier of facts and determines the credibility of the witnesses and the weight to be given to the testimony. *See Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.). Sufficient evidence of one violation is adequate to affirm a trial court's order revoking community supervision. *See Watts v. State*, 645 S.W.2d 461, 463 (Tex. Crim. App. [Panel

Op.] 1983); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980).

Appellant argues that C.C.'s testimony at the hearing on the State's petition that Appellant had not assaulted her renders the evidence insufficient to revoke his community supervision and proceed to adjudication. But C.C. also admitted that she had given police a written statement saying that Appellant had hit her with his fist. Although C.C.'s trial testimony conflicted with her earlier statements, the trial court was free to disbelieve her trial recantation. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding factfinder free to disbelieve complainant's trial recantation of earlier statements and that earlier statements were legally sufficient to support guilty verdict).

Appellant also argues that the police witnesses "could not tie any injuries suffered by [C.C.] to assaultive actions allegedly committed by" Appellant. But Deputy Weldon testified that C.C. told him Appellant had hit her with his fist and caused her to suffer pain, and Deputy Dezavala testified that the photographs she took showed redness and broken skin in the areas of C.C.'s body where C.C. said Appellant hit her.

Considering all of the evidence in the light most favorable to the trial court's decision, we hold that the trial court did not abuse its discretion by

concluding that Appellant intentionally or knowingly caused bodily injury to C.C. by striking her with his fist. We therefore overrule Appellant's second point.

## Conclusion

Having overruled all of Appellant's points in all three appeals, we affirm the trial court's judgments and its denial of Appellant's petition for writ of habeas corpus.

PER CURIAM

PANEL: GARDNER, J.; CAYCE, C.J.; and MEIER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 21, 2009