**AFFIRM; and Opinion Filed July 30, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

### No. 05-12-01075-CR

**LAZARO CONTRERAS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F11-53430-I**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Lang-Miers

Appellant Lazaro Contreras appeals from the adjudication of his guilt for possession of cocaine in the amount of less than one gram. Appellant argues that the trial court abused its discretion by (1) adjudicating guilt because the evidence is insufficient to show he violated the conditions of his community supervision, (2) admitting the testimony of the community supervision officer, and (3) considering evidence of prior violations. The State argues that the appeal must be dismissed because appellant did not file a proper certification of his right to appeal. The record has been supplemented with a proper certification, and this issue is moot. For the following reasons, we affirm the trial court's judgment. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled.

BACKGROUND

In November 2011, appellant pleaded guilty pursuant to a plea bargain. The trial court deferred adjudication of guilt, placed appellant on community supervision for two years, and assessed a $1,500 fine, court costs, and $135 in restitution. Appellant's conditions of community supervision included:

(a) commit no offense against the laws of the states or the United States;

(d) obey all rules and regulations of the supervision department and report as directed;

(e) notify the supervision officer not less than 24 hours prior to any changes in home or employment address;

(f) work faithfully at suitable employment;

(h) report within five days to arrange payment of court costs, fine, and other fees assessed by the court;

(j) pay a supervision fee of $60 plus a $2 transaction fee each month;

(k) participate in crime stoppers by contributing $50 within 90 days of being placed on community supervision;

(l) complete 120 hours of community service by the end of the supervision term;

(m) report as directed to the Comprehensive Assessment and Treatment Services program and pay any costs assessed by CATS;

(n) submit a urine sample and pay $200 for the urinalysis at $10 monthly;

(r) participate in and complete the Thinking for a Change class.

In January 2012, the State filed a motion to adjudicate alleging appellant violated the terms of his community supervision by failing to comply with conditions (d), (e), (f), (j), (k), and (r). Appellant pleaded true to the allegations, and the trial court accepted appellant's plea of true and continued appellant on community supervision.

In March 2012, the State filed a second motion to adjudicate alleging appellant violated the terms of his community supervision by failing to comply with conditions (a), (h), (j), (k), (l), (m), (n), and (r). Appellant initially pleaded true, but the trial court changed appellant's plea to not true.

The State called one witness, Rose Lugo, who testified that she was a community supervision officer for Criminal District Court No. 2 and that appellant was placed on community supervision "out of this court" on November 1, 2011, for possession of cocaine. The following exchange then occurred during the State's examination of Lugo:

Q  Did Mr. Contreras pay court costs and is – or is he delinquent in court costs of $1,766?

    [Defense counsel]: Object to hearsay.

    The Court:    Well, if – if she knows.

Q  (By [the State])   If you know.

A  Yes.

Q  And – and all these things I'm about to ask you on this motion, can you testify to?

A  Yes.

Q  Okay. Now, is – did he not pay community supervision fees and is currently delinquent $240?

A  Yes.

    [Defense counsel]: Judge, can I just get a continuing objection to hearsay at this point?

    The Court:    Yes.

Lugo then testified that appellant owed $50 for the crime stoppers fee, $100 for assessment fees, that he had not completed his community service hours, and that he had not participated in the Thinking for a Change class. On cross-examination, Lugo testified that she was not the field officer for appellant and did not prepare the "violation report." She said she

–3–

could not testify about specific dates appellant was required to make payments, but she offered to "go in there and look for you."

Appellant testified in his defense, as follows:

Q       Mr. Contreras, you just heard the probation officer list off allegations of violations that you committed while you were on probation. Are those true in fact?

A       Those are all reasonable doubts.

Q       Okay.

A       Reasonable doubts.

Q       All right. And concerning the fees –

[Defense counsel]: Can I see the motion?

A       Concerning the fees? How was I supposed to pay something that I had only been reinstated in less than a month [sic]? I only reported two times, so how was I gonna pay the whole amount on two reports?

Q       Okay.

A       When I got a report – when I got reinstated [sic]. And clearly Ju – the Judge Don Adams said no matter what I did to keep reporting. Yes, I went to jail, and yes, I bonded out, and reported again, to the same Ms. Burnsteins (phonetic).

Q       Okay. So you're saying you did not pay these fees, you were unable to?

A       I wasn't – I wasn't able to. I posted the money that I had for a bond.

Q       Okay.

A       Now, if I would've had [sic] never caught these charges that I – which I don't really understand – they went from a burglary of a vehicle to something that is a possession of a stolen property.

Q       Okay. And what about Thinking For A Change?

A       Thinking For A Change? I thought about a change. [The trial court] told me clearly to do [sic] whatever I did to report and that's exactly what I did.

Q       Okay.

A       No matter what I did, I reported.

Q       Thinking For A Change is a class, is it not?

–4–

A        I wasn't directed any paperwork's [sic]. I didn't get no paperwork's [sic] to where to go to community service. And y'all can call Ms. Burnsteins and verify that I didn't get no paperwork's [sic] from her.

Q        Okay.

A        I didn't get no urine test from her or nothing.

After hearing the evidence, the trial court adjudicated appellant guilty. The State called four witnesses in the punishment phase to show that appellant burglarized a motor vehicle and stole property from a car after he was placed on community supervision. The court assessed punishment at 24 months in state jail plus a fine, restitution, and court costs.

## DISCUSSION

Appellant raises three issues on appeal and all are related to the sufficiency of the evidence to support the trial court's decision to adjudicate guilt.

We review a trial court's decision to adjudicate guilt under an abuse of discretion standard. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); TEX. CODE CRIM. PROC. ANN. art. 42.12 § 5(b) (West Supp. 2012) (stating decision to proceed to adjudication reviewable in same manner as revocation of ordinary community supervision). A judgment adjudicating guilt must be supported by a preponderance of the evidence—that is, the greater weight of the credible evidence must create a reasonable belief that the defendant violated a condition of community supervision. *See Rickels*, 202 S.W.3d at 763–64. A finding of a single violation is sufficient to support a decision to adjudicate. *See Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980). It is the trial court's role, as the fact-finder in the hearing, to reconcile any conflicts in the evidence and judge the witnesses' credibility. *See Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.) (en banc).

In issue one, appellant argues that the evidence is insufficient to show he violated the conditions of his community supervision. In issue two, appellant argues that the doctrines of res

judicata and collateral estoppel precluded the trial court from considering evidence that appellant violated conditions (j), (k), and (r) because the trial court considered those allegations in the hearing on the State's first motion to adjudicate. In issue three, appellant argues that the trial court erroneously admitted the testimony of the community supervision officer over his hearsay objection and argues that her lack of personal knowledge rendered the evidence insufficient.

We first address whether the trial court erroneously admitted the testimony of the community supervision officer. We review a trial court's decision to admit evidence for an abuse of discretion. *See Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

Appellant objected to Lugo's testimony on the basis that it was hearsay. *See* TEX. R. EVID. 801 (defining hearsay). On appeal, he argues that Lugo did not have personal knowledge of the violations alleged in the motion to adjudicate. *See* TEX. R. EVID. 602 (requiring witness to have personal knowledge). We presume the trial court understood that the basis for appellant's objection was lack of personal knowledge because the trial court told the witness she could answer "if she knows." Based on that presumption, appellant preserved error. *See* TEX. R. APP. P. 33.1(a)(1)(A).

Appellant argues that Lugo did not have personal knowledge of the alleged violations and that her testimony "was based solely on the notes (or lack thereof) contained in the community supervision file made by other probation officers." Generally community supervision officers may testify from their department's records if the proper predicate is laid. *See Simmons v. State*, 564 S.W.2d 769, 770 (Tex. Crim. App. 1978); *Canseco v. State*, 199 S.W.3d 437, 439–40 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). But appellant has not cited anywhere in the record where it shows that Lugo was testifying from the community supervision department file as opposed to her personal knowledge. Appellant asked Lugo whether the field officer "made these notations that [appellant] didn't – that he violated these conditions" and she answered, "[t]hat's

the person who wrote up the violation report." But she did not state that the field officer wrote "these notes" or testify about where "these notes" were located. Appellant also asked whether the field officer was "supposed to document exactly when the person comes in that they did or did not make a payment" and she said she "would have to look through his narratives, his notes, to see if he actually noted the – I – I can't say from what I'm looking at right here." But the record does not indicate what Lugo was "looking at right here."

Lugo testified that she had been a community supervision officer since 1995 and was assigned to the court which placed appellant on community supervision. She identified appellant in open court, testified that he was placed on community supervision "out of this court" on November 1, 2011, for possession of cocaine, and testified that the State filed a motion to revoke on March 15, 2012. When asked whether appellant was delinquent on court costs, she was told she could answer the question "if she knows." She answered the question. We conclude that the witness demonstrated her personal knowledge and the trial court did not abuse its discretion by admitting her testimony.

Appellant also argues that the evidence is insufficient to support the trial court's decision to adjudicate. In connection with this argument, he contends that the doctrines of res judicata or collateral estoppel prohibited the trial court from considering evidence that he violated conditions (j), (k), and (r) because the court considered that same evidence when it decided to continue him on community supervision after a hearing on the State's first motion to adjudicate. The State argues that those doctrines do not apply to adjudication proceedings. We do not need to decide whether the doctrines apply because we conclude that the trial court could have formed a reasonable belief that appellant violated other conditions of community supervision.

Regarding condition (h), which required appellant to pay the court costs, fine, and "all monies as assessed by the Court pursuant to the payment agreement established by the Felony

Collections Department," appellant argues that the evidence is insufficient to support a violation of this condition because the State did not present evidence of a payment plan. The State did not offer evidence of a payment plan. However, Lugo testified that appellant was "delinquent" by $1,766. A reasonable inference from Lugo's testimony is that, even if appellant had a payment plan, he had not made payments according to the schedule in the plan and was delinquent by the stated amount. Additionally, appellant testified that he "wasn't able to" pay the "fees" because he "went to jail" and "posted the money I had for a bond." Based on appellant's own testimony, the trial court could have formed a reasonable belief that appellant was delinquent in paying his costs, fine, and other "fees."

Additionally, condition (n) required appellant to submit a urine sample and pay a urinalysis fee. The State concedes that it did not offer evidence that appellant failed to pay his urinalysis fee. However, appellant testified that he did not pay his "fees" because he used his money to post bond. He also testified that he did not get any paperwork from the community supervision officer and "didn't get no urine test from her or nothing." The trial court could have reasonably inferred from appellant's testimony that he had not submitted a urine sample or paid the urinalysis fee.

We conclude that the evidence is sufficient to support the trial court's reasonable belief that appellant violated at least condition (h) or (n). *See Sanchez*, 603 S.W.2d at 871 (one violation sufficient to adjudicate guilt). Consequently, we conclude that the trial court did not abuse its discretion by adjudicating appellant's guilt. We resolve issues one, two, and three against appellant.

**CONCLUSION**

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.7(a)

121075F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

LAZARO CONTRERAS, Appellant

No. 05-12-01075-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F11-53430-I.
Opinion delivered by Justice Lang-Miers,
Justices Moseley and Bridges participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of July, 2013.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE