**Reverse and Remand; Opinion Filed June 15, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-10-00866-CR

### MICHAEL EDWARD DANSBY SR., Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court**
**Kaufman County, Texas**
**Trial Court Cause No. 25891-CC**

## OPINION ON REMAND

Before Justices Bridges, Myers, and Brown
Opinion by Justice Myers

The issue in this case is whether the trial court abused its discretion by revoking Michael Edward Dansby Sr.'s community supervision and adjudicating his guilt based on evidence that appellant violated the conditions of community supervision by refusing during sex-offender treatment to provide information about his prior history of sexually abusing children. We conclude the trial court abused its discretion by revoking appellant's community supervision and adjudicating his guilt, we reverse the trial court's judgment, and we remand the cause to the trial court for further proceedings.

**BACKGROUND[1]**

Appellant pleaded guilty to indecency with a child. Pursuant to a plea bargain, the trial court deferred adjudication of appellant's guilt and placed him on community supervision for five years. Two of the conditions of community supervision were that appellant (1) submit to and pass polygraph examinations as directed by the community supervision officer and (2) successfully complete a sex-offender treatment program.

When appellant entered the sex-offender treatment program, he was informed that Texas law required the treatment providers to report to the appropriate authorities any disclosure of a previously unreported sexual offense or incident of child abuse and that the disclosure could result in legal prosecution. About nine months into his community supervision, appellant was required to submit to a sexual-history polygraph as part of the sex-offender treatment program. During the preliminary conference before the polygraph, appellant learned he would be asked questions about extraneous prior sexual offenses he may have committed. When the polygraph examiner asked appellant, "Do you have any other victims," appellant refused to answer the question and told the examiner that "his attorney told him not to say anything that might result in a prosecution." The polygraph examiner then terminated the examination.

As part of his sex-offender treatment, appellant was asked to write down his history of sexual experiences, but appellant failed to do so.[2] Appellant also attended group therapy sessions as part of the sex-offender treatment program. Appellant was largely reticent during these sessions and refused to disclose information. Appellant was repeatedly pressed to take the sexual-history polygraph and to participate in the therapy sessions, but appellant failed to do so.

---

[1] For a more detailed description of the facts of the case and the testimony presented, see *Dansby v. State*, 398 S.W.3d 233, 234–39 (Tex. Crim. App. 2013).

[2] State regulations applicable to sex-offender treatment providers require the use of sexual-offense histories and sexual-history polygraphs. *See* 22 TEX. ADMIN. CODE §§ 810.64(c)(19), (20); 810.68(3).

Eventually, appellant was discharged from the sex-offender treatment program without having successfully completed it.

After appellant's discharge from the treatment program, the State moved to revoke appellant's community supervision and proceed to adjudication of his guilt, alleging appellant violated the conditions of his probation by refusing to submit to the sexual-history polygraph as required by his community supervision officer and by failing to successfully complete the sex-offender treatment program. The trial court revoked appellant's community supervision, adjudicated him guilty of indecency with a child, and sentenced him to eighteen years' imprisonment and a fine of $960.

Appellant appealed the revocation of his community supervision and adjudication of his guilt, contending the trial court's findings that he violated the conditions of community supervision were based on his assertion of his Fifth Amendment right not to incriminate himself in his refusal to submit to the sexual-history polygraph. *See* U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself."). On appeal, this Court determined appellant's discharge from the sex-offender treatment program was not due solely to his failure to submit to the sexual-history polygraph but was also due to his lack of participation in counseling sessions and his inability to admit to and self-report his own deviant sexual behaviors. *See Dansby v. State*, No. 05-10-00866-CR, 2012 WL 1150530, at *4 (Tex. App.—Dallas Apr. 9, 2012) (mem. op., not designated for publication), *rev'd*, 398 S.W.3d 233 (Tex. Crim. App. 2013). We concluded this evidence supported the trial court's ruling that appellant violated the condition that he successfully complete a sex-offender treatment program for reasons other than appellant's invocation of his Fifth Amendment privilege. *Id.* at *5. We affirmed appellant's conviction without addressing the Fifth Amendment issue he raised.

The court of criminal appeals granted discretionary review and disagreed with this Court's decision. *Dansby v. State*, 398 S.W.3d 233 (Tex. Crim. App. 2013) (*Dansby I*). The court of criminal appeals stated that the "*sine qua non*" of the reasons for appellant's discharge from the sex-offender treatment program was his "steadfast refusal to confess to the commission of earlier sex offenses," including his failure to submit to the sexual-history polygraph. *Id.* at 242 (therapist required appellant submit to the sexual-history polygraph or be summarily discharged from the program; appellant's community supervision officer would have dismissed the motion to revoke community supervision if appellant had agreed to return to treatment and take the sexual-history polygraph); *see also id.* at 238 (community supervision officer would have refused to dismiss motion to revoke if appellant had reentered the treatment program without submitting to the sexual-history polygraph "because the State requires it in all of the programs"). The court of criminal appeals concluded that "[u]nder these circumstances, the court of appeals erred to believe it could eschew the constitutional issue on direct appeal." *Id.* at 242–43. The court of criminal appeals remanded the case to this Court.

On remand, we addressed the State's argument that appellant had forfeited his right to assert his Fifth Amendment privilege because he failed to object to the conditions of community supervision when they were first imposed. *Dansby v. State*, No. 05-10-00866-CR, 2014 WL 259014, at *6 (Tex. App.—Dallas Jan. 22, 2014) (mem. op., not designated for publication), *rev'd*, 448 S.W.3d 441 (Tex. Crim. App. 2014). We agreed with the State. We determined the record showed appellant knew the terms of his community supervision would require him to disclose his past sexual history and knew he could be at risk if he did so, yet appellant failed to bring the issue to the trial court's attention. *Id.* We concluded that appellant's failure to timely object to the conditions of community supervision in the trial court resulted in procedural default

and left appellant's issues on appeal unpreserved for appellate review. *Id.* We affirmed appellant's conviction. *Id.*

The court of criminal appeals granted discretionary review and disagreed with our analysis. *Dansby v. State*, 448 S.W.3d 441 (Tex. Crim. App. 2014) (*Dansby II*). The court of criminal appeals determined that appellant "was not placed on fair notice that he would be required to waive his Fifth Amendment right as part of" the conditions of community supervision. *Id.* at 449. The court concluded "that appellant did not forfeit his complaint that his Fifth Amendment rights were violated by his refusal to answer questions during sex-offender counseling and a polygraph examination about sexual-assault victims other than the complainant in this case." *Id.* at 452. The court of criminal appeals remanded the case to this Court for further proceedings.

**STANDARD OF REVIEW**

"Appellate review of an order revoking [community supervision] is limited to abuse of the trial court's discretion." *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (quoting *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). On a motion to revoke community supervision, the State has the burden to prove the allegations in the motion to revoke by a preponderance of the evidence. *Id.* at 763–64. This burden is met when the "greater weight of the credible evidence . . . would create a reasonable belief that the defendant has violated a condition of his [community supervision]." *Id.* (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). Proof of any one violation is sufficient to support revocation. *Lee v. State*, 952 S.W.2d 894, 900 (Tex. App.—Dallas 1997, no pet.). If the trial court determines the State's allegations are true and that sufficient evidence supports that determination, the court has discretion to continue, modify, or revoke community supervision. *See Ex parte Tarver*, 725 S.W.2d 195, 200 (Tex. Crim. App. 1986); *Perry v. State*, 367 S.W.3d

690, 693 (Tex. App.—Texarkana 2012, no pet.). If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984); *Lee*, 952 S.W.2d at 897.

## FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION

The Fifth Amendment privilege against self-incrimination protects a person, including a person on community supervision, from being required to provide information that would tend to incriminate him. *Chapman v. State*, 115 S.W.3d 1, 5–6 (Tex. Crim. App. 2003). "He may choose to remain silent rather than to respond to questions when the answers to those questions would tend to incriminate him." *Id.* at 5. This privilege permits a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Id.* (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). The State may not require a defendant on community supervision "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Minnesota v. Murphy*, 465 U.S. 420, 436 (1984).

There are two components to the exercise of the privilege against self-incrimination: risk of incrimination and compulsion to answer. *See id.* at 426. For there to be a risk of incrimination, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 486–87 (1951). The risk of incrimination exists if the person "has reasonable cause to apprehend danger from a direct answer." *Id.* at 486. The privilege extends to disclosures that would themselves support a conviction and "likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant . . . ." *Id.* The

privilege "applies only when the possibility of self-incrimination is a real danger, not a remote and speculative possibility . . . ." *Moore v. Comm'r*, 722 F.2d 193, 195 (5th Cir. 1984).

The compulsion element is satisfied when the government threatens to inflict "potent sanctions" unless the privilege is surrendered, or when the government threatens to impose substantial penalties because a person elects to exercise the privilege. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

## ANALYSIS

In his two issues on appeal, appellant contends the trial court erred in finding appellant violated the conditions of community supervision because the findings were based upon appellant's invocation of his rights under the Fifth Amendment privilege against self-incrimination for refusing to answer questions that might tend to incriminate him.

### Estoppel by Contract

The State asserts the doctrine of estoppel by contract bars appellant from complaining about the conditions of community supervision. Community supervision creates a contract between the defendant and the trial court with the conditions of community supervision forming the terms of the contract. *See Dansby II*, 448 S.W.3d at 447. Estoppel by contract means that "a party who accepts benefits under a contract is estopped from questioning the contract's existence, validity, or effect." *Rhodes v. State*, 240 S.W.3d 882, 891 (Tex. Crim. App. 2007).

The court of criminal appeals applied the doctrine of estoppel by contract in *Rhodes v. State*. In that case, Rhodes was serving time in the penitentiary when he escaped. When recaptured, Rhodes was tried and convicted for escape and was sentenced to ten years' imprisonment. The trial judge did not expressly order the escape sentence be served consecutively with the sentences Rhodes was serving when he escaped as required by the code of criminal procedure. *Id.* at 884; *see* TEX. CODE CRIM. PROC. ANN. art. 42.08(b) (West Supp.

–7–

2014). Rhodes later committed more felonies, and the State alleged the escape conviction for enhancement purposes. Rhodes objected to the use of the escape conviction for enhancement, asserting the judgment was void because the sentence was ordered to run concurrently with the sentences he was serving when he escaped. *Rhodes*, 240 S.W.3d at 884. The record before the court of criminal appeals did not show whether the concurrent serving of the sentence for the escape conviction was pursuant to a plea agreement. *Id.* at 887. However, the court of criminal appeals concluded that if it was not pursuant to a plea agreement, then the judgment was not void because it could be reformed through a judgment nunc pro tunc. *Id.* And, if there had been a plea agreement that the sentence would run concurrently with Rhodes's prior sentences, Rhodes was estopped from challenging the judgment. *Id.* In applying the estoppel-by-contract doctrine, the court stated,

> A defendant who has enjoyed the benefits of an agreed judgment prescribing a too-lenient punishment should not be permitted to collaterally attack that judgment on a later date on the basis of the illegal leniency. Here, appellant received a judgment that was illegally lenient by having his sentence run concurrently instead of consecutively. Had he complained about the illegal leniency at the time of trial, or even on direct appeal, the State could likely have obtained a legal judgment that would now be available for enhancement purposes. But instead, appellant quietly enjoyed the benefits of the illegally lenient judgment, challenging it now only because, due to his own subsequent criminal conduct, the judgment can be used to enhance his punishment for a new offense. If he agreed to the concurrent sentencing provision, then through his own conduct he helped procure and benefit from the illegality and he should not now be allowed to complain.

*Rhodes*, 240 S.W.3d at 892 (footnote omitted).

In this case, for the doctrine of estoppel by contract to apply, appellant must be challenging the legality of the terms of his contract, that is, the conditions of his community supervision. Appellant is not challenging the legality of the conditions that he submit to polygraph examinations and successfully complete sex-offender treatment. Instead, he is challenging the trial court's decision to revoke his community supervision and adjudicate his

guilt because he asserted his Fifth Amendment right not to incriminate himself. In *Dansby II*, the court of criminal appeals stated appellant had no "notice that he would have to waive his Fifth Amendment right as a prerequisite" for meeting the condition that he successfully complete sex-offender treatment. *Dansby II*, 448 S.W.3d at 452. Thus, appellant's waiver of his Fifth Amendment privilege against self-incrimination was not one of the conditions of community supervision and was not one of the terms of his contract with the trial court. *See Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.) (valid and enforceable contract requires "a meeting of the minds" and "each party's consent to the terms"). We conclude the doctrine of estoppel by contract does not apply.

### Legitimacy of Appellant's Assertion of the Privilege

For appellant's assertion of the Fifth Amendment privilege to be legitimate, there must have been a substantial danger of incrimination from the requested information, and there must have been compulsion to answer. *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).

The State asserts appellant's answers to the questions would not tend to incriminate him because the polygraph examiner and the sex-offender therapist instructed appellant not to provide any identifying information except his age and the victim's age at the time of the contact, the victim's gender, and whether the victim was a stranger or acquaintance. The community supervision officer testified appellant also would have had to disclose his behavior with the victim and whether he was related to the victim.

The State argues that the polygraph examiner's and sexual therapist's assurances that appellant could limit his responses to this information and avoid exposure to additional prosecution "were tantamount to an informal use immunity agreement and were sufficient to protect appellant's Fifth Amendment right after he has asserted it." We disagree. "The authority to grant immunity derives from the authority of a prosecutor to dismiss prosecutions." *Smith v.*

*State*, 70 S.W.3d 848, 850 (Tex. Crim. App. 2002). The prosecutor, with the approval of the trial court, has authority to dismiss a prosecution or grant immunity from prosecution. TEX. CODE CRIM. PROC. ANN. art. 32.02 (West 2006); *Smith*, 70 S.W.3d at 850–51. The polygraph examiner, the sex-offender therapist, and the community supervision officer were not part of the district attorney's office, and they did not have authority to grant appellant immunity from prosecution for statements he made to them as part of sex-offender treatment. Moreover, even if they did have the prosecutor's authority to grant immunity, no grant of immunity is enforceable unless the trial court approves the grant of immunity. *See Smith*, 70 S.W.3d at 851. We conclude the assurances of the polygraph examiner and the sex-offender therapist were not "tantamount to an informal use immunity agreement."

Although the information requested in the sex-offender therapy sessions and the sexual-history polygraph might not be sufficient, standing alone, to result in a prosecution and conviction, appellant's admission of the requested information "would furnish a link in the chain of evidence needed to prosecute" appellant in a case involving those admitted facts. *See Hoffman*, 341 U.S. at 486. The State does not explain how the polygraph examiner or sex-offender therapist could avoid testifying to appellant's admission in such a prosecution. The assurances of the sex-offender therapist and the polygraph examiner could not protect appellant's Fifth Amendment rights.

For there to be a risk of incrimination, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87. The setting in this case was that appellant was on community supervision for indecency with a child, he was attending a sex-offender treatment program, and he was warned that Texas law required the treatment providers to report to the appropriate authorities

–10–

any disclosure of a previously unreported incident of child abuse or sexual offense and that the disclosure could result in legal prosecution. Appellant was then asked to disclose his complete sexual history, including any other "victims," the ages of anyone involved, and all deviant sexual outlets. A defendant in this situation would have "reasonable cause to apprehend danger from a direct answer." *See id.* at 486. We conclude the record shows the required disclosures could tend to incriminate appellant.

The State also argues appellant did not have a legitimate Fifth Amendment interest at stake during the sexual-history polygraph because the polygraph would have included questions concerning appellant's "sexual development, adolescent sexuality and experimentation, dating history, intimate sexual contacts, gender identity issues, adult sexual practices, masturbatory practices, sexual dysfunction, fantasy content, and sexual functioning," *see* 22 TEX. ADMIN. CODE § 810.64(c)(19), which the State appears to argue would not have placed appellant at risk of prosecution. The category of "intimate sexual contacts" would have included sexual contact with minors, and appellant could perceive that answering such a question could tend to incriminate him. Moreover, even if questions about these categories were not incriminating, the record does not show appellant refused to answer questions about them. The State asserts "no record exists of any of the specific questions which appellant refused to answer." However, the report of the polygraph examiner states the interview with appellant concerned "pre-probation sexual crimes and deviant sexual behavior, excluding Dansby's instant offense." The report states the examiner told appellant he would be asking appellant "his age, his victim's age, what he did to the victim, and whether the victim was an acquaintance or stranger. . . . When I asked him, 'Do you have any other victims?', he politely refused to answer the question." The polygraph examiner then terminated the interview. This report does not present any evidence

–11–

that appellant refused to answer a question other than "Do you have any other victims?" As discussed above, answering this question could tend to incriminate appellant.[3]

Considering whether the compulsion element was satisfied, we conclude the record shows the State threatened to revoke appellant's community supervision and adjudicate his guilt because he refused to surrender the privilege against self-incrimination. *See Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977). The State's threat to revoke a defendant's community supervision for invoking the privilege not to provide information that could tend to incriminate him in a pending or later prosecution "create[s] the classic penalty situation" and violates the constitutional right. *Murphy*, 465 U.S. at 435.

We conclude appellant made a legitimate assertion of the Fifth Amendment privilege against self-incrimination.

### Sufficiency of the Evidence to Support Revocation

In this case, for appellant's community supervision to be revoked and his guilt adjudicated, the State had to prove the violations of the conditions of community supervision by a preponderance of the evidence. *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). However, appellant's legitimate exercise of the Fifth Amendment privilege against self-incrimination cannot be the reason for the revocation. *Dansby I*, 398 S.W.3d at 241. As the court of criminal appeals stated, discussing the facts in this case,

> Supreme Court decisions have "made clear" that a state may "not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." Thus, while a probationer may be compelled "to appear and give testimony about matters relevant to his probationary status[,]" he cannot be "required . . . to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." It bears emphasis "that

---

[3] The State also asserts that the presentence investigation report states that after the complainant in this case disclosed appellant's abuse, other family members disclosed that appellant "has been molesting family members for decades, maybe for 40 years." The report stated that the statute of limitations had "probably" run in several of these cases. The State argues that appellant could have disclosed the sexual offenses on which the statute of limitations had expired without fear of prosecution. However, this report was not in evidence when the trial court revoked appellant's community supervision and adjudicated his guilt, and nothing in the record shows the trial court considered the report when determining whether to revoke appellant's community supervision and adjudicate his guilt.

–12–

a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminate the threat of incrimination." But the appellant in this case was offered no such use immunity. The State cannot reasonably have believed that it could penalize him for invoking his Fifth Amendment privilege by revoking his conditional liberty *solely* on the basis of his refusal to answer questions that would tend to incriminate him during the course of the sexual history polygraph process—or, for that matter, during required sex offender group therapy sessions.

*Dansby I*, 398 S.W.3d at 240 (footnotes omitted) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426, 436 & n.7, 438 (1984); *Chapman v. State*, 115 S.W.3d 1, 5–6, 7 n.28 (Tex. Crim. App. 2003)).

The record shows the State's motion to revoke for failing to comply with the polygraph requirement was based solely on appellant's legitimate assertion of his Fifth Amendment privilege. For revocation to be supported by appellant's failure to meet the condition that he successfully complete a sex-offender treatment program, the record must show appellant would have been discharged from the program even if he had not refused to answer the potentially incriminating questions. *Dansby I*, 398 S.W.3d at 241. As the court of criminal appeals stated in *Dansby I*, the record did not show that. *Id.*; *see also id.* at 242 (sex-offender therapist's notes "indicate[d] that the appellant's steadfast refusal to confess to the commission of earlier sex offenses was by far the single most important instance of non-compliance, the *sine qua non*, that informed her decision to expel him from the treatment program").

The record shows the State failed to prove by a preponderance of the evidence that appellant violated either of the alleged conditions of community supervision independent of his assertion of the Fifth Amendment privilege against self-incrimination. *See id.* Accordingly, the trial court abused its discretion by revoking appellant's community supervision and adjudicating his guilt.

Having found error, we must determine whether the error is reversible. Because the error was constitutional, a violation of appellant's Fifth Amendment right not to be a witness against himself, we cannot affirm unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). In this case, the revocation of community supervision and the adjudication of appellant's guilt were the direct result of the violation of appellant's Fifth Amendment privilege not to provide information that could be used to prosecute him. We conclude the error in this case is reversible. We sustain appellant's issues on appeal.

**CONCLUSION**

We reverse the trial court's judgment adjudicating appellant's guilt. We reinstate the trial court's July 9, 2008 Order of Deferred Adjudication, and we remand the cause to the trial court for further proceedings.[4]

/Lana Myers/

Publish
TEX. R. APP. P. 47.2
100866F.P05

LANA MYERS
JUSTICE

---

[4] In *Dansby II*, the court of criminal appeals stated, "the trial court could alter the conditions of community supervision to permit a defendant to invoke his Fifth Amendment right as to victims for which he has never been convicted." *Dansby II*, 448 S.W.3d at 452. If the court means that the trial court could modify the conditions of community supervision to allow a defendant to participate in sex-offender treatment without having to provide sexual-offense history when he asserts the Fifth Amendment to providing the information, then it is not clear where this authority originates. Article 42.12, section 13B(a)(2) requires the trial court to impose as a condition of community supervision of a defendant charged with indecency with a child that the defendant "attend psychological counseling sessions for sex offenders." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 13B(a)(2) (West Supp. 2014). Sex-offender treatment is governed by statutes, regulations, and licensing and regulatory boards. The regulations require that sex-offender treatment providers must make efforts to determine the offender's

> sexual offense behavior, including description of offense behaviors, number of victims, gender and age of victims, frequency and duration of abusive sexual contact, victim selection, access, and grooming behaviors, use of threats, coercion or bribes to maintain victim silence, degree of force used before, during and/or after offense, and deviant arousal patterns.

22 TEX. ADMIN. CODE § 810.64(c)(20). The treatment providers must use "[a]utobiographies, sexual history polygraphs, . . . [and] interviews . . . to identify antecedents to offending." *Id.* § 810.68(3). The regulations also provide that "[s]exual history polygraphs shall include all aspects of a client's sexual behaviors and a victim's list that occurred prior to the offense of conviction." *Id.* § 810.64(d)(18). In other words, if appellant is placed on community supervision, then he must participate in a sex-offender treatment program. And if appellant is in a sex-offender treatment program, then he must provide truthful answers to questions about his history of sexual offenses, including the information required by section 810.64(c)(20) and (d)(18). These questions may be asked as part of a polygraph examination ("sexual history polygraphs"), a request for written lists and descriptions of the offenses ("autobiographies"), or as a request for oral information about past offenses, including questions and discussions during therapy sessions ("interviews"). Nothing indicates that a trial court has authority to exempt a defendant from compliance with a portion of the sex-offender treatment program. The legislature gave the trial courts authority to require a defendant to participate in sex-offender treatment as a condition of community supervision, but the legislature did not give the trial courts authority to regulate the treatment program by exempting a defendant from portions of the treatment program. The court of criminal appeals' statement appears to be obiter dictum because, two sentences later, the court stated, "In this case, we decide only that appellant did not forfeit his complaint that his Fifth Amendment rights were violated . . . ." *Dansby II*, 448 S.W.3d at 452. The court then stated its "decision is limited to the sole determination that appellant did not forfeit his complaint . . . ." *Id.* Therefore, notwithstanding the court of criminal appeals' statement in *Dansby II*, we do not believe the trial court can modify the conditions of appellant's community supervision to provide that he does not have to answer questions about his prior, unadjudicated sexual offenses.

–15–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

MICHAEL EDWARD DANSBY SR.,
Appellant

No. 05-10-00866-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court, Kaufman
County, Texas
Trial Court Cause No. 25891-CC.
Opinion delivered by Justice Myers. Justices
Bridges and Brown participating.

Based on the Court's opinion of this date, we **REVERSE** the trial court's judgment
adjudicating appellant's guilt. We **REINSTATE** the trial court's July 9, 2008 Order of Deferred
Adjudication, and we **REMAND** the cause to the trial court for further proceedings.

Judgment entered this 15th day of June, 2015.