**AFFIRMED as MODIFIED and Opinion Filed October 16, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00722-CR

**MELVIN BERNARD GOODEN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F-1770898-I**

# MEMORANDUM OPINION
Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

On November 29, 2017, appellant entered a plea of guilty to a charge of possession of a controlled substance with intent to deliver, to-wit: 5-fluoro ADB, known by the street name "K2."[1] In accordance with a negotiated plea bargain, the trial court deferred a finding of guilt and placed appellant on two years' community supervision.

On April 5, 2018, the trial court held a hearing on the State's motion to proceed to an adjudication of guilt. At the conclusion of that hearing, the trial court added conditions to the terms

---

[1] Testimony was heard describing "K2" as follows:

K2 is a synthetic cannabinoid. What it essentially is is a drug that is purchased illegally overseas in a powdered form mixed with acetone or some other type of solvent and sprayed onto like some cheap pipe tobacco or something like that and it's sold. It looks kind of like marijuana but it has a completely different psychotropic property. It's then rolled up and smoked like marijuana.

of appellant's community supervision including an electronic leg monitor and enrollment in a 10P program.

On June 8, 2018, the trial court held a hearing on the State's amended motion to proceed with an adjudication of guilt. Appellant entered a plea of "not true" to the violations alleged in the State's motion. The court found that appellant had violated conditions (a) and (d) of his community supervision, adjudicated appellant's guilt, and sentenced him to eight years' imprisonment.

## **Violation of Conditions (a) and (d)**

In his first issue, appellant claims that the trial court abused its discretion when it found that the State proved appellant violated conditions (a) and (d) of his community supervision by a preponderance of the evidence. Appellant claims that the evidence showed appellant was unable to comply with these conditions of probation. The State responds that the evidence is sufficient to establish violations of both conditions.

### *Standard of Review*

On a motion to proceed with an adjudication of guilt, the State has the burden to prove a violation of a condition of community supervision by a preponderance of the evidence. *Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013). "A preponderance of the evidence" means the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of community supervision. *Id*. at 865; *Dansby v. State*, 468 S.W.3d 225, 231 (Tex. App.—Dallas 2015, no pet.). Where, as in this case, the State's motion to revoke alleges multiple violations of the terms of community supervision, proof of any one of the alleged violations is sufficient to support the revocation order. *Dansby,* 398 S.W.3d at 231; *Lee v. State*, 952 S.W.2d 894, 900 (Tex. App.—Dallas 1997, no pet.).

We review a trial court's decision to proceed with an adjudication of guilt for an abuse of discretion. *Hacker,* 389 S.W.3d at 865; *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). Because the trial judge is the sole judge of the witnesses' credibility and the weight to give the evidence, in determining whether the trial court abused its discretion, we review the evidence in the light most favorable to the order. *Hacker,* 389 S.W.3d at 865.

### Condition (a): New Offenses

Condition (a) of appellant's community supervision required that appellant "commit no offense against the laws of this or any other State, or the United States, and . . . not possess a firearm during the term of supervision." The State's amended motion to proceed to an adjudication of guilt alleged that appellant violated condition (a) twice by committing (1) the offense of failure to identify as a fugitive (in Cause M18-50721-B) on March 4, 2018; and (2) the offense of evading arrest/detention enhanced (in Cause F18-540721-I) on May 10, 2018.

*March 4, 2018: Failure to Identify*

Brandon Ledbetter, a police officer with the University of Texas System at U.T. Southwestern, arrested appellant at Zale Lipshy University Hospital on March 4, 2018, for failure to identify as a fugitive. Ledbetter had responded to a dispatch concerning two subjects loitering at the hospital. Ledbetter made contact with appellant while two other department officers stopped the female with him. Appellant told Ledbetter that his name was "Kevin Simmons" and that his date of birth was July 5, 1988. When Ledbetter was unable to confirm a state identification card or driver's license associated with the given name and date of birth, Ledbetter asked appellant if he had ever been in the Dallas County jail. Appellant said he had been in jail for "everything." Ledbetter then ran the name Kevin Simmons with the given date of birth through the Dallas County

Adult Information System but found nothing. Ledbetter only learned appellant's true identity by taking him to jail and checking his fingerprints.

At the time he was detained by Ledbetter, appellant was carrying two backpacks and a brown paper shoebox. Items recovered from inside the backpack included a photocopy of a Bridge[2] ID card, a credit card bearing the name Oliver Gooden, a laptop with a Home Depot background, and business cards, prescription bottles, Veteran's Administration cards, and other documents bearing the name Frank Salcido. Salcido testified that he did not give appellant permission to possess any of these items, all of which had been stolen from his car.

Appellant, testifying in his own behalf at the hearing, explained that he had been visiting the chapel at U.T. Southwestern Hospital when someone in a uniform approached him and asked him to leave. As he exited the hospital, a police officer grabbed him and told him he was being detained. The officer who detained him did not accuse him of committing an offense.

Appellant admitted that he had a lot of contact with law enforcement and that when an officer asks for his name he is not supposed to give a false name. When asked why he did so on this day, appellant replied that he was confused as to why he was being stopped:

> I didn't feel like I needed to give them any information at the time and point because I didn't feel like I had done anything wrong. I kept asking him why I was being detained. He didn't tell me . . . no crime that I committed. I was already told to leave and I was proceeding to leave and he just started asking me my name. If I walk up to you and ask you your name, would you just voluntarily give me your name or anything? I mean.

Appellant admitted that he did not want to give his name, so he decided to give Ledbetter a false name. However, he also denied giving Ledbetter a false name and claimed that Ledbetter got the name Kevin Simmons from the Bridge ID in his backpack. When the prosecutor reminded

---

[2] *See* www.bridgenorthtexas.org (stating that the Bridge is a "multi-service campus" that has become "an internationally recognized model for homeless recovery").

appellant that the entire exchange was captured on Ledbetter's body camera and asked appellant if he needed to watch the video, appellant said, "No."

*May 10, 2018: Evading Arrest*

On May 10, 2018, Dallas Police Officer Christopher Todd arrested appellant for the evading arrest offense alleged in the State's amended motion to adjudicate. On that day, appellant was near the Stewpot[3] when Dallas Police Officer Morales and another officer made contact with appellant for being asleep and intoxicated in a public place. Morales ran appellant's name through the system and found he had a warrant for his arrest. Officer Todd and his partner responded to the location and saw appellant running from the officers. Todd located appellant, whom he recognized from previous contacts.[4] When Todd called to appellant over his squad car's public address system, appellant ran around a car in the parking lot, putting the car between himself and Todd. Todd again called to appellant over the public address system and appellant took off running. Todd's partner chased appellant on foot and caught him about a block away.

Todd testified that he and his partner were attempting to arrest appellant on warrants when appellant evaded arrest. After he was caught, appellant asked Todd by name not to arrest him. Appellant told Todd he was on a leg monitor and had to report the next day. Todd testified that he left a message for appellant's probation officer notifying her that appellant would not be reporting as scheduled because he was in jail. Todd verified the outstanding arrest warrant after appellant's apprehension.

---

[3] *See* www.thestewpot.org (stating "The Stewpot offers a safe haven for homeless and at risk individuals in Dallas").

[4] Officer Todd testified as to previous encounters with appellant. In 2016, appellant evaded arrest when Todd tried to arrest him for public intoxication. In 2017, Todd arrested appellant for the manufacture and delivery of "K2." Todd also testified that the focus of his job over the preceding two years had been directed at the sale of "K2" in the downtown area, primarily in the downtown area around the Stewpot and the Bridge.

Appellant, testifying in his own behalf at the hearing, explained he was homeless and had been sleeping in the street when the officers woke him:

> Officer Morales pulled up behind me. Him and another PSO parking enforcement officer got outside their van. They . . . told me I was intoxicated and they started asking me for identification. I told them I didn't have any identification. I gave them all my release paperwork (from Parkland), I told them I was on leg monitor. He said, well, okay, let me run your name. I'm pretty sure most officers they use the walkie-talkie that they have on their shoulder to run the names. He proceeded to go towards his van. The parking enforcement officer, he told me to put my backpack down because he thought I had a gun in it. I looked at him crazy and I told him am I detained. He said, no, you're not detained, we're just running your name for warrants and tickets.

Appellant believed that he was free to walk away and did so. The first officer did not attempt to stop him. He only ran when the other officers came and tried to stop him.

Appellant testified that he never heard Todd tell him to stop. Appellant admitted he saw the officers chasing him; he confirmed he failed to report because he was in jail.

### Condition (d): Failure to Report

Condition (d) of appellant's community supervision required that appellant "[o]bey all rules and regulations of the Supervision Department, and report in the manner and time as directed by the Judge or Supervision Officer, to wit: Monthly, Twice Monthly, or Weekly." The State's amended motion to proceed to an adjudication of guilt alleged that appellant violated condition (d) when he failed to report to probation in December 2017, January 2018, and February 2018, and when he failed to report as directed by the trial court judge.

At the hearing held on that motion, Carla Wilson, a Dallas County probation officer, testified that appellant received a copy of the conditions of community supervision when he was placed on probation on November 29, 2017. The conditions required, in relevant part, that appellant: (d) "[o]bey all rules and regulations of the supervision department, and report in the manner and time as directed by the Judge or Supervision officer;" (e) "notify the Supervision

Officer not less than twenty-four (24) hours prior to any change in [his] home or employment address;" and (s) "[c]all within 5 calendar days and schedule an appointment at the EAST OFFICE at 214-320-6700, 8425 Forney Road, Dallas TX, 75227." Wilson further testified that appellant did not report in December 2017, January 2018, or February 2018, nor did he notify the probation department when he changed his address, or contact the Forney Road office.

Wilson testified that the probation department unsuccessfully tried to contact appellant via home visits and "due diligence letters" mailed to the address he provided when placed on probation. Appellant later told Wilson he did not report because he was confused about where to report and thought the "Forney" reporting office listed on his paperwork was in Forney, Texas. Wilson stated that, in a particular evaluation given to appellant, he "never mentioned anything about Forney, but in fact he said he didn't want to report to that location because it's heavily gang related with rivals and he didn't feel safe."

Regarding the allegation that appellant failed to report to the trial court as directed by the trial judge, Wilson testified that appellant stopped by the court after he was released from jail on May 8, 2018. Per the trial judge's instructions, appellant was scheduled for his weekly report on Friday, May 11, 2018, but did not appear because he was in jail as a result of his May 10, 2018 arrest by Dallas Police Officer Christopher Todd for evading arrest.

Appellant had previously told the trial court that he gave his aunt's address as his place of residence when he was placed on probation. After being released on probation, he learned that he could not stay there and became homeless. Appellant relocated to downtown Dallas where he received resources from the Bridge and the Stewpot. Appellant stated that, if the trial court continued him on probation, he would notify the probation department if his circumstances changed even though he had not done so before.

In his testimony at the adjudication hearing, appellant confirmed that he did not report to probation in December 2017, January 2018, and February 2019. He claimed that he was confused about the reporting location because his paperwork listed "Forney." Appellant said he went to his previous reporting location on Buckner, but discovered that the Buckner office had been closed. He said he saw "Forney" on his paperwork and "left it alone at that." Appellant admitted that he was afraid to go to the area of town where he thought he was supposed to report. He asserted that he would have reported if he had understood where he was supposed to report.

Regarding his failure to report as directed by the trial judge, appellant testified that he believed he would have a bed at the Bridge when he got out of jail on May 8, 2018. However, the people at the Bridge told him there were no beds available and instructed him to leave and to return the following morning. They also gave him a referral to another shelter, but he did not want to go there. Appellant emailed his electronic leg monitor contact person that the Bridge would not take him, went to a 7-Eleven, sought medical attention at Parkland Hospital, and then returned to the Stewpot.

*Analysis*

Officer Ledbetter's testimony establishes that appellant gave a false name and date of birth when Ledbetter asked appellant to identify himself as he was leaving Parkland hospital on March 4, 2018. While appellant claimed indignation at being detained without having committed a crime, the evidence established that he was in possession of stolen property and that he falsely identified himself as Kevin Simmons. The trial court could have reasonably believed that appellant intentionally committed the offense of failure to identify to avoid being arrested for the theft of the stolen property in his possession. The evidence is sufficient to show that appellant violated condition (a) of the terms and conditions of his community supervision.

Officer Todd's testimony established that appellant intentionally fled from a person he knew was a police officer attempting to lawfully detain or arrest him. Appellant was asleep on the street when Officer Morales and another officer woke him up. Morales told appellant that he was intoxicated, asked for identification, and then went to his van to "run" appellant's name. While appellant claimed that one of the law enforcement officers told him he was not detained, appellant admitted that he ran when Todd and his partner showed up. It would have been reasonable for the trial court to have inferred that appellant knew Todd was a police officer because Todd had previously arrested him. The trial court could have reasonably believed that appellant intentionally committed the offense of evading arrest. The evidence is sufficient to show that appellant violated condition (a) of the terms and conditions of his community supervision.

The evidence further establishes that appellant did not report to the probation department in the months of December 2017, January 2018, or February 2018, or on May 11, 2018, as directed by the trial judge. Appellant did not contact the Forney Road office at the phone number listed on his conditions of community supervision to clarify his reporting location. Appellant did not notify the probation department when he learned that he could not live at the address he provided the probation department. Because the trial court was the judge of all the witnesses' credibility, the judge was free to disbelieve appellant's claim that he did not report in December, January, and February because he was confused when he read "Forney" on his conditions of supervision. Appellant's statement during an evaluation interview that he didn't want to report to that location because he didn't feel safe reflects that he knew where to report but chose not to do so. The evidence is sufficient to support the trial court's finding that appellant violated condition (d) of his community supervision.

We conclude that the evidence is sufficient to support the trial court's finding that appellant violated conditions (a) and (d) of his community supervision. Consequently, the trial court did not abuse its discretion by adjudicating appellant's guilt. We overrule appellant's first issue.

**Modification of Judgment**

In his second issue, appellant claims that the trial court's judgment incorrectly reflects that he entered an "open plea" to the State's motion to proceed to an adjudication of guilt. Appellant asks this Court to modify the judgment to reflect he pleaded guilty pursuant to a plea agreement that he would be sentenced to two years' deferred adjudication community supervision.

The record, however, does not support that request. Accordingly, we deny appellant's second issue. However, the record does support modification of the judgment on another ground.

The record reflects that appellant originally entered a plea of guilty to the charge of possession with intent to deliver a controlled substance, to wit: "5-fluoro ADB, in an amount by aggregate weight, including any adulterants or dilutants, of 1 gram or more but less than 4 grams." In accordance with a plea bargain agreement, appellant was placed on deferred adjudication community supervision for two years.

Subsequently, at a hearing on the State's motion to proceed to an adjudication of guilt, appellant entered a plea of "not true" to the allegations in the State's motion. The trial court's judgment adjudicating guilt correctly reflects, in the "Plea to Motion to Adjudicate" field, a plea of "NOT TRUE." However, in the "Terms of Plea Bargain" field that judgment incorrectly reflects "OPEN." The record establishes the absence of any plea agreement to the violations alleged in the State's motion.

We have the authority to modify an incorrect judgment when the evidence necessary to correct that judgment appears in the record. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d

26, 27-28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the trial court's judgment adjudicating guilt to read "N/A" in the "Terms of Plea Bargain" field of the judgment.

The State has also asked that we modify the order placing appellant on deferred adjudication so as to accurately reflect the terms of the plea bargain agreement. The trial court's order of deferred adjudication correctly reflects a plea of guilty in the "Plea to Offense" field, but leaves blank the "Terms of Plea Bargain." The State argues that, to correctly reflect what happened in the case, the trial court's order of deferred adjudication be modified to read "Terms of Plea Bargain: Deferred Community Supervision for 2 years." This Court has the power to modify whatever the trial court could have corrected by a judgment nunc pro tunc if the evidence necessary to correct the judgment appears in the record. *Hardin v. State*, 05-16-00621-CR, 2016 WL 7384164, at \*2 (Tex. App.—Dallas Dec. 21, 2016, pet. ref'd) (mem. op. not designated for publication). Accordingly, we modify the order of deferred adjudication be modified to read "Deferred Community Supervision for 2 years" in the "Terms of Plea Bargain" field.

### Conclusion

As modified, we affirm the trial court's judgment.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180722F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MELVIN BERNARD GOODEN,
Appellant

No. 05-18-00722-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F-1770898-I.
Opinion delivered by Justice Osborne.
Justices Myers and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"N/A" in the "Terms of Plea Bargain" field of the judgment;

"Deferred Community Supervision for 2 years" in the "Terms of Plea Bargain" field.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered October 16, 2019

–12–