

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-23-00144-CR

---

AARON ROSS EPPERSON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 115th District Court
Marion County, Texas
Trial Court No. F15097

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Aaron Ross Epperson pled guilty to aggravated assault of a public servant, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (Supp.). Pursuant to a plea-bargain agreement with the State, Epperson was placed on deferred adjudication community supervision for ten years. The terms and conditions of Epperson's community supervision required him to, among other things, refrain from committing another crime. The State alleged that Epperson had committed the new offense of attempted burglary of a habitation and filed a motion to adjudicate Epperson's guilt. After an evidentiary hearing, the trial court found the State's allegation true, adjudicated Epperson's guilt, and sentenced him to thirty years' imprisonment.

On appeal, Epperson argues that the evidence was legally insufficient to prove that he had violated the terms and conditions of his community supervision by committing attempted burglary of a habitation.[1] Because we find that sufficient evidence supported the trial court's decision to adjudicate Epperson's guilt, we affirm the trial court's judgment.

## I. Sufficient Evidence Supported the Trial Court's Finding that Epperson Violated a Term and Condition of His Deferred Adjudication Community Supervision

### A. Evidence at the Hearing

Testimony at the hearing showed that Epperson suffered from the effects of methamphetamine use. Alisha Smith testified that she and her husband had known Epperson for many years and lived within a few blocks of him. Smith testified that her husband "knew the nature of, you know, his substance abuse and really just tried to help him," sometimes by giving

---

[1]In companion cause number 06-23-00145-CR, Epperson appeals his conviction for evading arrest with a motor vehicle.

2

him money. Smith said she became uncomfortable with Epperson's behavior and instructed her husband not to allow "[Epperson] back over at the house."

On the day of the incident, Smith was home alone. She testified that she was asleep on the couch when she heard a noise around 9:00 a.m., woke up to her dog barking, and "saw a shadow" in the backyard through the window blinds. When Smith investigated, she saw that Epperson had breached the closed gates of her backyard chain-link fence and was standing at the back door with his hand on the doorknob. According to Smith, Epperson was wearing a blue and white glove, was carrying a "Walmart sack," and was hiding something behind his back, which she could not see. She testified that she asked Epperson what he was doing there and that Epperson did not answer the question. Smith said that neither she nor her husband had given Epperson permission to be on their property and believed that Epperson was there to break into their house. Smith said she was in shock and called the police after Epperson abided by her request to leave.

Benjamin Wilson, a sergeant with the Jefferson Police Department, responded to Smith's call with Officer David Lowrance. Wilson and Lowrance went to Epperson's house and talked to him while Epperson held a glove in his hand. According to Wilson, "[Epperson] seemed a little bit nervous" and said he was at Smith's home to check on her. Lowrance testified that Epperson's excuse did not explain why he had breached the backyard fence and opined that Epperson had attempted to burglarize Smith's home.

Epperson admitted that he had gone to Smith's home on the day of the incident but claimed it was to obtain help to unlock a cellphone he had purchased at Walmart. Epperson said

3

he went to the backyard instead of the front door because he "thought [he] heard [the Smiths] in the back." Epperson also claimed that he had knocked on the back door. When asked why he was wearing a glove on the day of the incident, Epperson said that he liked to wear gloves and considered them "like [his] little Michael Jackson swag."

After Epperson testified, Smith said she had never seen Epperson wear a glove before the incident. She also said that Epperson did not ask for help with a cellphone.

## B.    Standard of Review

"The decision to proceed to an adjudication of guilt and revoke deferred adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision." *Lawrence v. State*, 420 S.W.3d 329, 331 (Tex. App.—Fort Worth 2014, pet. ref'd). "We review an order revoking community supervision under an abuse of discretion standard." *Id.* (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). "In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision." *Id.* (citing *Cobb v. State*, 851 S.W.2d 871, 873–74 (Tex. Crim. App. 1993)). "The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling." *Id.* (citing *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981)). "If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision." *Id.* (citing *Cardona*, 665 S.W.2d at 493–94).

4

### C. Analysis

"Proof of any one violation" by a preponderance of the evidence "is sufficient to support" a trial court's decision to revoke community supervision and adjudicate guilt. *Dansby v. State*, 468 S.W.3d 225, 231 (Tex. App.—Dallas 2015, no pet.). Epperson argues that the evidence was insufficient to support the trial court's finding that he violated the terms and conditions of his deferred adjudication community supervision by committing a new crime. We disagree.[2]

A person commits the offense of burglary if, without the effective consent of the owner, the person "enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02. "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01. "The necessary specific intent can be proven through circumstantial evidence, and we may rely on events that took place before, during, or after the commission of the offense." *Cary v. State*, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016); *see Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) ("In assaying the record for evidence of intent, we look to 'events before, during and after the commission of the offense.'" (quoting *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977))).

Here, the evidence showed that Epperson was known to use methamphetamine, had received money from Smith's husband in the past, but was no longer welcome at the Smiths'

---

[2]By a second point of error, Epperson also argues that the evidence was insufficient to support the State's failure-to-pay allegations in its revocation motion. Because we determine that sufficient evidence supported the finding that Epperson attempted to burglarize a habitation, we need not address Epperson's second point.

home. While Smith's husband was away, Epperson breached the Smiths' backyard fence and was at the backdoor without her permission. Although Epperson had not yet entered the home, Smith said that she saw Epperson's hand on the doorknob. Smith testified that Epperson was wearing a glove, carrying a Walmart sack, and hiding something behind his back. When she asked Epperson what he was doing at her home, Epperson did not answer. Even so, he told officers that he went to check on Smith but then testified that he was there to get assistance with a cellphone. Based on this inconsistent testimony, the trial court could have determined that Smith lied to the officers investigating the incident, which indicated guilt. The trial court could have also determined that Epperson was wearing a glove, not as "Michael Jackson swag" but to hide fingerprint evidence, and that he was holding a bag to assist in carrying items he hoped to take from the home. As a result, the placement of his hand on the doorknob was an act amounting to more than mere preparation that tended, but failed, to effect the commission of burglary of a habitation.

Based on the totality of the circumstances, we find that a preponderance of the evidence established that Epperson violated the terms and conditions of his deferred adjudication community supervision by attempting to enter the Smiths' home with the intent to commit theft. As a result, we find no abuse of discretion in the trial court's decision to adjudicate Epperson's guilt. We overrule Epperson's points of error.

## II.     Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     November 27, 2023
Date Decided:       December 8, 2023

Do Not Publish